110 N.J. Super. 181 (1970)
264 A.2d 752
BRYAN CONSTRUCTION CO., INC., PLAINTIFF,
v.
EMPLOYERS' SURPLUS LINES INSURANCE COMPANY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 23, 1970.
*182 Mr. Joseph J. MacDonald for plaintiff (Messrs. Harrison, Hartman & MacDonald, attorneys).
Mr. Harold I. Braff for the defendant, Employers' Surplus Lines Insurance Company (William H. Covert, on the brief; Messrs. Braff, Litvak and Ertag, attorneys).
Mr. William J. Cleary, Jr., for defendant Aetna Casualty and Surety Company (Messrs. Lamb, Blake, Hutchinson and Dunne, attorneys).
*183 Mr. Gerald W. Conway for defendant Employers Mutuals of Wausau (Messrs. Schreiber and Lancaster, attorneys).
Mr. Stanley Teich for defendants Arthur J. O'Connor, James J. Laffey and Thomas A. Laffey, t/a O'Connor-Laffey & Co., and Wohlreich and Anderson, Ltd. (Messrs. Lieb, Teich and Berlin, attorneys).
Mr. Ralph V. Mancini for defendant County of Union.
Mr. John B. Stone for defendant, Joseph Allan (Messrs. Ryan, Saros, Davis and Stone, attorneys).
Mr. John Budd for defendant Ingvald Moe (Messrs. Budd, Larner, Kent, Gross and Picillo, attorneys).
Mr. Louis Auerbacher, Jr., for defendant Reliance Insurance Company.
MOUNTAIN, J.S.C.
Plaintiff entered into a contract with the County of Union to construct an automobile parking building and juvenile detention center in Elizabeth, New Jersey. To protect itself against certain risks incident to the project it sought and obtained policies of insurance from Employers' Surplus Lines Insurance Company (Employers), Aetna Casualty & Surety Company (Aetna) and Employers Mutual Liability Insurance Company of Wisconsin, generally or often referred to as Employers Mutuals of Wausau (Wausau). After completion or near completion of the structure, alleged defects of a serious nature appeared in the design and construction of the building. On or about June 1, 1967 suit was instituted by the County of Union against plaintiff, as general contractor, as well as against the architect, engineer and corporate surety on plaintiff's performance and completion bond. The complaint alleged negligence, improper construction and a failure to adhere *184 to proper standards. Plaintiff turned to each of the three carriers mentioned above, demanding that they agree to indemnify it as to any liability that might arise from the suit and that they provide a defense to the action. Each carrier disclaimed, contending that the asserted coverage did not exist. Thereupon plaintiff instituted this suit seeking, among other things, a declaratory judgment as to the interpretation of each policy  specifically, as to whether the asserted coverage did or did not exist. After answers had been filed plaintiff moved for judgment on the pleadings or for partial summary judgment against each of the three carriers, as well as for other incidental relief. The motions for summary judgment go only to the issue as to the interpretation of the three policies. Other issues projected in the complaint are not involved. Defendant Wausau thereupon filed a cross-motion for summary judgment on the basic coverage issues.
It will be convenient to consider Wausau's motion first. The policy in question is long and complicated. It consists of a basic document of six printed pages to which are appended a declarations sheet, two pages of schedules containing descriptions of the insured hazards and various premium data, followed by 16 separate endorsements. The effective date of all endorsements is the same as the effective date of the policy. Plaintiff complains that the result is a composite document filled with ambiguities and well nigh incomprehensible. There is no doubt that it is difficult to read but I do not find it incomprehensible.
Two points deserve mention. In the first place, it is important to bear in mind the difference between complexity and ambiguity. This was a complex underwriting transaction; it did not lend itself to simplicity of expression or format. Complexity born of necessity is not to be confused with ambiguity, whether accidental or artful. Secondly, this type of policy, consisting of a basic printed document extensively modified by endorsements both enlarging and limiting the scope of coverage, seems to lend itself to *185 liability underwriting where an undertaking presents a variety of risks and hazards with respect to which protection is sought. The basic document is in effect modified and tailored by endorsements to conform to the precise underwriting requirements. 1 Long, The Law of Liability Insurance, § 10.02.
Coming now to the terms of the policy itself, the applicable insuring agreement in the basic document affords broad coverage with respect to property damage liability, the insurer agreeing "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." With respect to contractual liability coverage (Endorsement No. 4), it agrees "[t]o pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule, shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
Turning from the insuring agreements to the exclusions, we find in the basic document that the policy does not apply "(h) * * * to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; * * *." (Emphasis supplied). In the endorsement describing the contractual liability coverage there is an identical provision appearing in paragraph (i) under the heading "Exclusions."
Endorsement No. 1 contains a provision which specifically replaces subparagraph (h) of the exclusions contained in the basic document. It reads as follows:

Broad Form Property Damage Coverage
It is agreed that exclusion H of the policy and (H) of the contractual liability coverage endorsement are replaced by the following:
*186 Under coverage B of the policy and L of the contractual liability coverage endorsement.
1. To injury to or destruction of property owned or occupied by or rented to the insured, property held by the insured for sale or property entrusted to the insured for storage or safekeeping, or
2. Except with respect to liability under sidetrack agreements covered by this policy or the use of elevators or escalators at premises owned, rented or controlled by the insured, to injury to or destruction of
(I) property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured,
(II) tools or equipment while being used by the insured in performing his operations,
(III) property in the custody of the insured which is to be installed, erected or used in construction by the insured,
(IV) that particular part of any property, not on premises owned by or rented to the insured,
(A) upon which operations are being performed by or on behalf of the insured at the time of the injury thereto or destruction thereof, arising out of such operations, or
(B) out of which any injury or destruction arises, or
(C) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured,
(V) property which is being transported by the insured by motor vehicle or team, including the loading or unloading thereof.
3. To injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises. [Emphasis supplied]
Paragraph (IV) (C) above clearly and explicity covers the claim made by the County of Union and in and of itself would seem dispositive of the case.
There should also be considered, however, the effect to be given the provision, applicable both in respect of the coverage described in the basic document and that afforded by the contractual liability coverage endorsement, that excludes "injury or destruction of work completed by or for the named insured, out of which the accident arises." This exclusionary provision is said now to be in common use in contractors' liability policies and it appears not to have been directly considered by any of our courts. It has, however, been examined in other jurisdictions where it has *187 been generally accorded the meaning attributed to it by Wausau.
The identical provision was before the California District Court of Appeal in Liberty Building Co. v. Royal Indemnity Co., 177 Cal. App.2d 583, 2 Cal. Rptr. 329 (1960). Plaintiff had constructed dwellings which thereafter in certain respects proved defective. The persons who had purchased the dwellings presented claims to the plaintiff and started suits. Plaintiff called upon the defendant for indemnification against liability and to provide a defense to the lawsuits. The latter refused. In sustaining the carrier's position the court said,
This Exclusion means that if the insured becomes liable to replace or repair any "goods or products" or "premises alienated" or "work completed" after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some other property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not."
In Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co., 189 Kan. 528, 370 P.2d 396 (Sup. Ct. 1962) a similar issue was presented. Plaintiff had installed a complete heating and air conditioning system in an office building. Because of defective installation a part of the system sustained damage and had to be replaced. Defendant disclaimed responsibility under a policy which insured the plaintiff against property damage but contained a provision excluding from coverage damage or destruction of "[a]ny goods or products manufactured, sold, handled, or *188 distributed by the Insured or work completed by or for the Insured out of which the accident arises." The court sustained the position of the carrier, holding that the damage came within the exclusion as having occurred with respect to work completed by the insured. The court went on to point out that the language of the exclusion was clear and unambiguous.
McGann v. Hobbs Lumber Co., 150 W. Va. 364, 145 S.E.2d 476 (Sup. Ct. 1965) also presented a case remarkably like the one we are considering. The insured constructed a building. After completion a wall collapsed, requiring that it be replaced. The builder's policy afforded broad property damage coverage, limited, however, by an exclusion substantially identical to that contained in the Wausau policy. The court held for the carrier upon the ground that the building represented work completed by the insured, and hence damage to it caused by the negligence of the insured fell squarely within the exclusion. Almost identical on its facts is Vobill Homes, Inc. v. Hartford Accident & Indem. Co., 179 So.2d 496 (La. Ct. App. 1965). Suit had been brought against the insured for defects in a residence it had built which were allegedly due to its negligence in the manner of construction. The homeowner who had purchased the residence sought as damages the cost of repairing the defects. The builder turned to his carrier, which had issued a contractor's liability policy of the usual type, but again excluding from coverage injury or damages to work completed. In sustaining the carrier's position the court said:
* * * it has uniformly been held that a liability policy with an exclusion clause such as the present does not insure any obligation of the policyholder to repair or replace his own defective work or defective product. [Citing cases]
The interpretation to this effect of the exclusion clause has also consistently been recognized by other decisions which did allow coverage for damages to other property or for other accidental loss resulting from the defective condition of the work-product (even though recovery for the injury to the work-product itself was excluded by the clause in question).
*189 See also, Home Indemnity Company v. Miller, 399 F.2d 78 (8 Cir.1968); Volf v. Ocean Accident and Guarantee Corporation, 50 Cal.2d 373, 325 P.2d 987 (Sup. Ct. 1958); Hauenstein v. St. Paul Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122 (Sup. Ct. 1954); 7A Appleman, Insurance Law and Practice, § 4508.
In accordance with these authorities, with which the court is in complete agreement, Wausau's motion for summary judgment is granted and plaintiff's motion addressed to Wausau is denied.

The Aetna Policy
An endorsement to this policy has the effect of including in the policy as exclusions the following:
(IV) That particular part of any property, not on premises owned by or rented to the insured,

* * * * * * * *
(c) The restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

* * * * * * * *
3. To injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.
In view of what has been said above with respect to the Wausau policy it is clear that the presence of these exclusionary provisions requires the denial of plaintiff's motion addressed to Aetna.

The Employers Policy
This policy was issued under the Surplus Lines Law, N.J.S.A. 17:22-6.40 et seq.
An exclusion in the policy provides that coverage does not apply 
*190 (e) to claims made against the insured.
(i) for repairing or replacing any defective product or products manufactured, sold, handled or distributed by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;
(ii) for the loss of use of any such defective product or products or part or parts thereof;
(iii) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or property damage (other than property damage to a product of the insured) resulting from improper or inadequate performance, design or specification;
Although by no means as clear as the exclusionary language in the other two policies, these provisions may very well import the same meaning and on motion for summary judgment must be given that meaning most favorable to the person against whom the motion is made. Plaintiff's motion against Employers is likewise denied.