UNITED PROPERTIES, INC. and Echo Valley Country Club Corp., Plaintiffs-Appellees Cross-Appellants,

v.

The HOME INSURANCE COMPANY, Defendant-Appellant Cross-Appellee.

No. 2–65619.

Court of Appeals of Iowa.

Aug. 25, 1981.

---

William J. Koehn and Diane M. Stahle of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for defendant-appellant/cross-appellee.

David Wiggins of Williams & LaMarca, West Des Moines, for plaintiffs-appellees/cross-appellants.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

DONIELSON, Judge.

Appellant The Home Insurance Company (liability insuror of Sinmast of America, Inc.) appeals trial court's judgment that appellant is liable to appellees for damages to appellees' tennis courts caused by use of Sinmast's product. The appellant contends it is not liable because its policy with Sinmast contained various exclusions which covered the facts of this case. Appellees cross-appeal contending that interest on the judgment against appellant should accrue from the date of their original default judgment against Sinmast rather than from the date of the judgment against appellant in the present case. Appellees also contend that appellant should be charged with the costs of the appellees' prior lawsuit against Sinmast. Our scope of review is limited to correction of errors at law. Iowa R.App.P. 4. We affirm as modified.

I.

Appellees originally commenced an action against Parking, Inc. and Sinmast of America, Inc. alleging damage to appellees' tennis courts at the Echo Valley Country Club located in Polk County, Iowa. Sinmast did not appear in the original action and a default judgment was entered against it on March 29, 1978 for $122,974.00 plus interest and costs. Due to bankruptcy, judgment against Sinmast was returned unsatisfied. Appellees then commenced the present action against The Home Insurance Company which was the liability insurance carrier of Sinmast. The trial court found that the damages awarded at the time of the default judgment consisted of $17,624 in direct damages for resurfacing the tennis courts and $105,350 in consequential damages for lost business. The trial court also found that the insurance policy did not exclude coverage for the damages at issue and ren-

dered judgment against appellant for the full amount of $122,974 plus interest and costs from August 20, 1980. Appellant then commenced this appeal claiming it is not liable under the insurance policy. Appellees' cross-appealed claiming they should have been awarded interest from the date of the original default judgment and costs of the original suit.

## II.

◼ Appellant contends that the trial court erred in awarding $17,624.00 to repair appellees' tennis courts because the policy specifically excludes from coverage the cost of inspecting, repairing, replacing or removing Sinmast's product. Appellant relies primarily on *Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir. 1975) that held the "own product" exclusion prevented a contractor from recovery since the only claimed and proven damage done was to the contractor's own product, by his own work. In *Biebel* defective roofing materials were applied to a metal roof, but no damage was done to the roof itself and the metal roof was not the contractor's product. In the instant case the asphalt was not Sinmast's product. However, Sinmast's product did in fact damage appellees' asphalt tennis courts. We agree with the trial court that the damage done to the underlying asphalt by Sinmast's coating makes the instant case distinguishable from *Biebel*. The damage was not limited to only Sinmast's product, therefore the "own-product" exclusion does not bar appellees' recovery of the full amount of money required to repair the asphalt tennis courts. Since the only feasible method of repairing the tennis courts was to apply a new layer of asphalt and a new color coating, the trial court's award of $17,624 in general damages is affirmed.

## III.

◼ Appellant next contends it is not liable because the policy excludes damages resulting from:

"... inspecting, repairing, replacing, removing, or withdrawing from the market or from use because of any known or suspected defect or deficiency therein ... (c) other property of which the Named Insured's product ... are a component or ingredient."

Appellant cites *Waite v. Aetna Casualty and Surety Co.*, 77 Wash.2d 850, 467 P.2d 847 (1970), where it was held that coverage was excluded because the fairlead (insured's product), was a component part of a logging tower. Appellant contends that the Sinmast color coating was a component part of the underlying asphalt to which it was applied because the Sinmast product could not be used separately to create a tennis playing surface. The appellees argue that *Waite* is distinguishable because the logging tower could not be used at all without a fairlead, while the asphalt tennis courts could be, and in fact, were used for playing tennis for several years prior to the application of the Sinmast coating, which appellees contend was done primarily for cosmetic purposes. The trial court agreed with the appellees' reasoning and found as a fact that:

Evidence was produced to the affect that Sinmast had to be applied to something (other than bare ground). Likewise, there is evidence that for the most part the Sinmast application was for cosmetic purposes. The tennis courts could have been and were, in fact, used for the intended purpose without and prior to the Sinmast application. Unlike the fairlead in *Waite*, supra, the Sinmast product was not a necessary and/or controlling or vital component. This Court, therefore, finds that the Sinmast product was not a component of the asphalt courts and is thus not subject to the damage exclusion above quoted.

Appellant asserts that the trial court did not give the terms in the policy (i. e. component or ingredient) their usual and ordinary meanings when it found the Sinmast coating "was not a necessary and/or controlling or vital component." Webster's New World Dictionary, 2d Ed. (1976) defines component as "1. a) an element or ingredient b) any of the main constituent parts, ..." Constitu-

ent is defined as: "1. necessary in forming or making up a whole; component [a constituent part]." Thus the trial court did give the terms their usual and ordinary meaning. Since these findings are supported by substantial evidence and thus binding upon this court upon review, the trial court's finding is affirmed. Iowa R.App.P. 14(f)(1).

### IV.

Appellant's final contention is that the language of the policy does not cover consequential damages suffered by the appellees. The appellant contends it is only liable for property damage to tangible property and that lost profits are a form of intangible property not covered under the policy. While it is true that the language of the policy does define property damage as "... injury or destruction of tangible property"; additional language in the policy defines damages to mean: "damages because of ... property damages to which this policy applies including ... damages for the loss of use of property resulting from property damages; ..." Once damage to the asphalt tennis courts occurred (i. e. an injury to tangible property) the unambiguous language of the policy quoted above made the appellant liable for damages for the loss of use resulting from the property damage (i. e. the lost profits). This is consistent with *Safeco Insurance Company v. Munroe,* 165 Mont. 185, 192, 527 P.2d 64, 68 (1974), which held that "once it has been found that tangible property has been damaged, there is insurance coverage for all damages because the term damages is used without limitation and, in fact, is expanded to include damages for loss of use." Therefore we affirm the trial court's judgment that appellant is liable for $105,-350 in consequential damages. If appellant intended to exclude consequential damages it should have said so with specific language to that effect.

### V.

The appellees/cross-appellants assert that they should have been awarded interest on the judgment entered below from March 29, 1978, the date the original judgment against Sinmast was entered. They also assert that appellant should be liable for the costs of the earlier action. In *Savery v. Kist,* 234 Iowa 98, 111, 11 N.W.2d 23, 29 (1943), the supreme court stated that an insurance company becomes liable to pay judgments of its insured on the day judgment is rendered. The supreme court also awarded interest from that date and costs of the prior action. Thus we modify the trial court's judgment to give appellee 7% interest from March 29, 1978, plus costs of the original action.

AFFIRMED AS MODIFIED.