LUSALON, INC. *vs.* THE HARTFORD ACCIDENT AND INDEMNITY COMPANY & others. October 31, 1986. *Insurance*, General liability insurance, Construction of policy, Contractor's insurance.

The plaintiff (Lusalon) was the masonry subcontractor in the construction of the new Boston English High School. Its work included mortaring in

---

preassembled and preprimed metal doors and windows. In the course of that work, the door and window frames were spattered with mortar. The general contractor directed Lusalon to clean the frames. This Lusalon did with a muriatic acid solution. Lusalon failed to rinse the frames properly, leaving a calcium choride residue that caused the finish paint, applied later by another subcontractor, to peel off. Lusalon sued the general contractor for a balance due on its subcontract price, and the general contractor counter-claimed for damages against Lusalon for the scraping and repainting work necessary to correct the peeling problem. In that action, a master found that Lusalon's cleanup work had been unworkmanlike and recommended judgment for the general contractor on the disputed issues. Lusalon retained new counsel, who asked Lusalon's insurer, the defendant Hartford, to take over the defense of the counterclaim. Hartford refused, denying liability under the policy and asserting delays in notification and forwarding of the counterclaim. Lusalon and the general contractor then entered into a settle-ment of the principal action.

Lusalon commenced this action against Hartford for indemnification under the policy, acknowledging as true the facts found by the master in the earlier action. The judge allowed Hartford's motion for summary judg-ment, ruling that the policy did not cover the loss and that Hartford was not obligated to defend. Lusalon, treating that ruling as dispositive of all claims against all defendants,[1] moved for entry of final judgment and appealed therefrom.

Lusalon was covered by comprehensive general liability insurance which generally covered Lusalon's liability for property damages subject to a so-called "broad form property damage endorsement." The latter replaced certain otherwise applicable policy exclusions with the following: "This insurance does not apply: (y) to property damage . . . (2) . . . to . . . (d) that particular part of any property, not on premises owned by or rented to the insured, . . . (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured; . . . ."

We agree with the judge that on this set of facts the windows and doors fell within the exclusionary language "that particular part of any property . . . the restoration . . . of which has been made necessary by reason of faulty workmanship thereon by . . . the insured." It is not unexpected that mortar will splash on doors and windows in the course of mortaring them in, and, barring contract language to the contrary, we think it stands to reason that it will be a part of the masonry subcontractor's work to clean up the splash. The unworkmanlike cleanup led directly to the failure of the

---

[1] The other defendants were Lusalon's corporate attorney, Lusalon's trial attorney in the other action, and its individual and corporate insurance agents, all of whom Lusalon alleged failed to notify Hartford of the claim.

paint, just as, in *Bond Bros., Inc.* v. *Robinson*, 393 Mass. 546, 547-548 (1984), the subcontractor's faulty rebar work led to the failure of the concrete foundation poured by the general contractor. In that case, as in this, the insurer was held not liable under the identical exclusionary language. In *Frankel* v. *J. Watson Co.*, 21 Mass. App. Ct. 43 (1985), the insurer was held not liable under the same exclusion for damage to the foundation constructed by the insured-subcontractor, but was held liable for resulting damage to the superstructure of the building. In the two cited cases the liability of the insurer did not extend to parts of the property that the insured had worked on. Those cases control this one. The opposite results reached on somewhat similar facts in *Haerens* v. *Commercial Cas. Ins. Co.*, 130 Cal. App. 2d Supp. 892 (1955), and *Meiser* v. *Aetna Cas. & Sur. Co.*, 8 Wis. 2d 233 (1959), were based on different exclusionary language in the policies in those cases ("injury to . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control") which was held to be "inherently ambiguous" (8 Wis. 2d at 238) and thus was construed against the insurer. The broad form exclusion, by contrast, was held not to be ambiguous in the *Bond Bros.* case, 393 Mass. at 548.

Any duty that Hartford might otherwise have had to defend against the general contractor's counterclaim, see *Continental Cas. Co.* v. *Gilbane Building Co.*, 391 Mass. 143, 146-147 (1984); *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 165-169 (1983); *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983), was forfeited by Lusalon's failure to notify Hartford and to forward the counterclaim until after the case had been tried to the master and adverse findings had been entered by him. This delay was prejudicial as matter of law. Compare *Potter* v. *Great American Indemnity Co.*, 316 Mass. 155, 157 (1944); *O'Kane* v. *Travelers Ins. Co.*, 337 Mass. 182, 184-185 (1958); *Maryland Cas. Co.* v. *Hunter,* 341 Mass. 238, 243-244 (1960); *Spooner* v. *General Accident Fire & Life Assurance Corp.*, 379 Mass. 377, 378-379 (1979).

*Judgment affirmed.*

*Peter J. Gagne* (*Lisa H. Harrod* with him) for the plaintiff.
*Joseph J. Walsh* for The Hartford Accident and Indemnity Company.