**WESTERN WORLD INSURANCE COMPANY, Appellant,**

**v.**

**H.D. ENGINEERING DESIGN & ERECTION CO., Olson Concrete Company, Respondents,**

**Med–Tek, Inc., Defendant.**

**No. C4–87–1689.**

Court of Appeals of Minnesota.

· Feb. 16, 1988.

David B. Orfield, Mark J. Heley, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Western World Ins. Co.

H.D. Engineering Design & Erection Co., pro se.

Lawrence E. Meuwissen, O'Connor & Hannan, Minneapolis, for Olson Concrete Co.

Richard D. Allen, Minneapolis, for Med–Tek, Inc.

Considered and decided by LANSING, P.J., and NORTON and

IVERSON,* JJ., with oral argument waived.

## OPINION

NORTON, Judge.

This is a declaratory judgment action brought by Western World Insurance Company (Western) on the basis that it had no duty to defend and indemnify its insured, H.D. Engineering Design & Erection Company (H.D.). The claims were made by Med–Tek, Inc. (Med–Tek) and Olson Concrete Company (Olson) arising from the collapse of structural steel on Med–Tek's property. After a court trial on stipulated facts, the trial court held that appellant was under a duty to defend H.D. against the claims of Med–Tek and Olson, and that appellant had a duty to indemnify H.D. for the claimed damages of Med–Tek and Olson except attorney fees. Judgment was entered pursuant to that order on June 3, 1987. The court rejected appellant's motion for amended findings by order dated July 9, 1987. Western appeals from the judgment and from the July 9, 1987 order. In an October 28, 1987 order, the court of appeals dismissed with prejudice the portion of the appeal concerning Med–Tek pursuant to a joint stipulation between appellant and respondent Med–Tek.

## FACTS

This action arises out of the collapse of structural steel for which respondent Olson was the general contractor. The structure was under construction as an addition to an existing warehouse for Med–Tek. Olson subcontracted with respondent H.D. to construct the addition. Olson was to provide all materials and H.D. was to provide services. The structure collapsed when H.D. employees negligently placed materials on the roof of the only partially completed structure. As a result of the collapse of the structure, both Med–Tek and Olson made claims against H.D. Olson's claim covered damages for the increased costs caused by the loss of use of the property damaged or destroyed by H.D.'s negligence. Olson does not claim reimbursement for the services which H.D. contracted to supply for $37,500. H.D. sought coverage and defense from its insurer, appellant Western.

The stipulated facts relevant to this appeal follow:

2. On or about August 22, 1985, H.D. Engineering entered into a standard subcontract agreement with Olson Concrete to "receive, unload, erect and insulate" a Star Manufacturing metal building. * * *

3. Olson Concrete furnished the structural steel, insulation and roof decking materials to be used in the erection and insulation of the Star Manufacturing metal building.

4. Olson Concrete erected concrete block walls, poured the concrete floor and inserted anchoring bolts in the foundation on the Med–Tek construction site prior to the time H.D. Engineering began to erect the structural steel on the project.

5. H.D. Engineering began to work on the Med–Tek project on August 30, 1985.

6. The actual erection of the steel framework on the Star Manufacturing building began on or about August 31, 1985.

7. No Olson Concrete labor crews were working on the Med–Tek project during the erection of the structural steel components by H.D. Engineering. Except as noted in paragraph 8 below, no other person, corporation, contractor, or subcontractor was working on the Med–Tek project during the erection of the structural steel components by H.D. Engineering.

8. Other than H.D. Engineering personnel or its subcontractors, the only people on the job site during the erection of the steel were Olson Concrete's construction project manager, Jack Jarrard, and his supervisor trainee, Scott Bergman.

9. On September 3, 1985, the steel erection was approximately 50% completed.

10. By September 4, 1985, H.D. Engineering had erected three of the four steel "bays" called for in the project. Most of

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

the beams and joists were assembled, but the bolts had not been completely installed and finally tightened.

11. At least six bundles of roof decking materials were placed at the top of the erected steel by H.D. Engineering on September 4, 1985.

12. The steel erected by H.D. Engineering collapsed sometime during the night of September 4 or early morning hours of September 5, 1985. Olson Concrete and Med–Tek claim that the steel collapse was caused solely by the negligence of H.D. Engineering and further claim that the damages hereafter claimed by Olson Concrete and Med–Tek were solely caused by the negligence of H.D. Engineering.

13. Olson Concrete Co. and Med–Tek claim that H.D. Engineering personnel recognized the risk that placing the bundles of roof decking materials on top of the loosely bolted frame would cause the frame to shift and lean. Olson Concrete Co. and Med–Tek further claim that H.D. Engineering attempted to brace the structure using six (6) strands of ¼" steel cable that had been used on the site by Olson Concrete Co. in the erection of concrete block walls. Olson Concrete and Med–Tek further claim that H.D. Engineering placed four (4) of the six (6) strands in a manner that would tend to prevent the frame from falling against the existing Med–Tek building located to the east and two (2) of the six (6) strands in a manner tending to secure the frame from falling toward the west. Olson Concrete and Med–Tek claim that the unequal bracing along with the weight and loosely bolted connections of the structure all were factors contributing to the collapse of the steel toward the west. For purposes of this action and this action only, Western World does not dispute these claims, but it is Western world's position that these claims are irrelevant to the coverage issues presented in this action.

14. No one was on the construction site at the time of the collapse.

15. The structural steel furnished by Olson concrete for H.D. Engineering to use in the erection of the Star Manufacturing metal building was substantially destroyed by the collapse of the building.

16. The roof decking and insulating materials furnished by Olson Concrete for H.D. Engineering to use in the erection of the Star Manufacturing building were partially destroyed by the collapse of the structural steel. Concrete block walls and anchoring bolts installed by Olson Concrete on the Med–Tek project site were damaged by the collapse by the structural steel.

17. The completion of the Med–Tek project was delayed for some months by the collapse of the structural steel. Both Med–Tek and Olson Concrete claim they were damaged by the delay caused on the project.

18. Olson Concrete has brought a lawsuit against H.D. Engineering seeking damages allegedly resulting from the collapse of the structural steel.

19. The various elements of losses claimed by defendant Olson Concrete are as follows:

1) Loss of all primary and secondary structural steel;

b) Loss of 73% of the roof decking materials;

c) Loss of 43% of the rigid insulation materials;

d) Loss of metal railings and other miscellaneous work;

e) Dismantling and removal of damaged steel and debris;

f) Remedial design, engineering, reconstruction of damaged concrete and masonry, footings, foundation and anchoring apparatus;

g) Additional cost of steel erection in winter; and

h) Additional costs for completion of building under winter conditions.

Olson claims the total of its damages is $256,043.34.

\*     \*     \*     \*     \*     \*

21. Western World provided H.D. Engineering general liability insurance coverage pursuant to a general liability policy, endorsed to cover this project, policy no. GLA–208815.

22. Pursuant to the general liability policy, Western World agreed to pay on behalf of its insured (H.D. Engineering) "... all sums which the insured (H.D. Engineering) shall became [sic] legally obligated to pay as damages ..." because of "property damage" to which this insurance applies, caused by an "occurrence." "Occurrence" under the policy is defined as follows:

"Occurrence," means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended by the insured.

The policy defines "property damage" as follows:

"Property damage" means:

1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

2) Loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policy contains a number of exclusions.

\* \* \*

Western denied coverage under several exclusions including the work product exclusions:

(m) to the loss of use of tangible property which has not been physically injured or destroyed resulting from the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

(n) to property damage of the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of the materials, parts or equipment furnished in connection therewith.

The trial court ruled that Olson's claimed damages are within the insuring clause defining "property damage" because the loss of steel, roof decking, insulation and other materials are "clearly property damage since they were destroyed or physically injured by the collapse." The court ruled that the costs of clean-up, redesign and reconstruction are covered because they are "causally related" to the property damage, as defined in *Federated Mutual Insurance Co. v. Concrete Units*, 363 N.W. 2d 751, 757 (Minn.1985).

The work product exclusions were held not to apply. Exclusion (m) was held inapplicable because a contractor's general liability policy is designed to cover the insured's tort liability. Exclusion (n) for damage to the insured's product did not apply, according to the court, because H.D. did not supply any goods. Exclusion (o), which excludes coverage for damage to work performed by the insured did not apply because other than the cost of re-erecting the steel building itself, "damage to other property and damages causally related to the property damage are not excluded."

In its motion for amended findings, appellant asserted that an additional exclusion, (k)(2) applied. It excluded damage to "property used by the insured." The trial court denied the motion by a July 9, 1987 order without explaining the grounds for denial.

## ISSUE

Did the trial court err by ruling that appellant must defend and indemnify its insured?

## ANALYSIS

Appellant challenges the trial court's determination that there is coverage for costs of services to repair and replace the work

originally performed by H.D. and the replacement costs of the materials used by H.D. on the execution of the contract. Appellant argues the work product exclusions prevent coverage for both the materials and the service costs of re-erecting the steel structure under two Minnesota Supreme Court cases. *See Knutson Construction Co. v. St. Paul Fire and Marine Insurance Co.*, 396 N.W.2d 229 (Minn. 1986); *Bor–Son Building Corp. v. Employers Commercial Union Insurance Company of America*, 323 N.W.2d 58 (Minn.1982). Under these cases, the essential question is whether the claimed damages represent "business risks," contractual risks for which the insured must bear responsibility or "insurance risks," which are covered by a general liability policy.

*Bor–Son* established the basic framework for distinguishing between the two types of risk. *See Bor–Son*, 323 N.W.2d 58. In *Bor–Son*, an owner of two newly built high-rise apartment complexes sued the general contractor after completion of the two projects. *Id.* at 59–60. He alleged faulty workmanship and faulty materials resulted in severe water leakage in both buildings. *Id.* Efforts to cure the problem were generally not successful. *Id.* at 60. Bor–Son's general liability insurer denied coverage and refused to defend its insured. *Id.*

The trial court ruled that the insurer breached its duties to defend and provide coverage, but was overturned by the Minnesota Supreme Court. *Id.* at 61. The supreme court held that the general contractor assumed certain "business risks" when it entered into the construction contracts with the owner. *Id.* One of the risks it assumed was "the obligation to construct buildings free from defects, and to remedy, on demand, any defects discovered within a year of completion." *Id.* The damages arose from a breach of this obligation of contract, the court held. *Id.* at 63. Therefore, because the damages resulted from "faulty workmanship in the performance of the contracts," the claim was not within the coverage of the contractor's general liability policy. *Id.*

*Insured Risks*

Under *Bor–Son*, an insurance risk which is covered by a general liability policy is for "injury to persons and damage to other property." *Id.* at 63–64 (quoting *Weedo v. Stone–E Brick, Inc.*, 81 N.J. 233, 240–41, 405 A.2d 788, 792 (1979). *Bor–Son* stated that:

> The coverage is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* (quoting Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 441 (1971)). An insured risk is one where:

> [T]he accidental injury to property or persons substantially caused by his unworkmanlike performance exposes the contractor to almost limitless liabilities.

*Id.* at 64 (quoting *Weedo*, 81 N.J. at 239–40, 405 A.2d at 791).

*Business Risks*

Risks not covered by a general liability policy are those which arise out of breach of contract for failure to provide the type of work contemplated in the contract itself:

> The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against.

*Id.* at 63 (quoting Henderson at 441). Business risks are those which the insured has ability to control:

> The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied.

The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.

*Id.* at 64 (quoting *Weedo,* 81 N.J. at 239, 405 A.2d at 791). Where damages claimed are the cost of correcting the work itself, the standard comprehensive general liability policy does not provide coverage. *Id.* at 64 (quoting *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.,* 591 S.W.2d 760, 765 (Tenn.1979)).

The *Knutson* case essentially followed *Bor–Son. See Knutson Construction Co. v. St. Paul Fire and Marine Insurance Co.,* 396 N.W.2d 229 (Minn.1986). In *Knutson,* the owner sued the general contractor of a large apartment complex several years after completion of the project. *Id.* at 230. The suit alleged faulty workmanship and use of defective materials by the contractor. *Id.* The insurer refused to defend and indemnify their insured, and the insured brought a declaratory judgment action. *Id.* The trial court granted the insurer's summary judgment motion which was affirmed by this court. *Id.* The supreme court affirmed, holding that under *Bor–Son,* the damage resulted from a "business risk" which was to be borne by the general contractor and not the insurers under the comprehensive general liability policy. *Id.*

The supreme court found significant similarities between *Bor–Son* and *Knutson,* and the court found the two cases to be legally indistinguishable. *Id.* at 232. In particular, the general contractor in both cases had the ultimate contractual responsibility to provide all labor and materials. *Id.* Additionally, in both cases the owner sued after completion of the project for damages only for correcting defects in the building itself. *Id.*

The *Knutson* court emphasized that the owner risks suits by third parties who claim to have sustained personal injury or property damage "as the result of the project being defectively constructed." *Id.* at 234. This risk:

may be shifted by a contractor purchasing a comprehensive general liability insurance policy to protect against loss to third persons or their property during the course of the work.

*Id.*

The court held the policy did not provide coverage for "claims of defective materials and workmanship giving rise to a claim for damages to the property itself which is the subject matter of the construction project." *Id.* at 235. In making this limited holding, the court also noted that the purpose of comprehensive liability insurance coverage is "to provide protection for personal injury or property damage caused by the product only and not for the replacement or repair of the product." *Id.* (quoting *Centex Homes Corp. v. Prestressed Systems, Inc.,* 444 So.2d 66 (Fla.App.1984)).

■ In this case, we agree with the trial court that *Bor–Son* and *Knutson* are distinguishable. The facts of those cases differ greatly from the facts here. Here the subcontractor, not the general contractor, has been sued. The suit is for damages caused by the subcontractor's negligence which caused an accident. It is undisputed that the cause of the structural collapse was the negligence of H.D. H.D. was negligent in its failure to secure the partially assembled structure against the forces of nature over which it had no control such as wind and gravity. The purpose of a liability policy is to provide protection from accidents. Additionally, this case does not involve damage caused by faulty workmanship or defective materials. The portion of the steel building which was erected was done so properly, but the negligent act of placing the materials on the unfinished structure caused the resulting property damage. Finally, the damage here was damage to property of third persons, not damage to goods provided by the insured. Olson, the general contractor, was a third person whose property was damaged as a result of negligence on the part of H.D. All the insured was contractually obligated to do was provide services.

Olson's additional costs of service and materials for re-erecting the steel building

under winter conditions are also covered by the policy under the "property damage" definition because the damages are a direct result of the loss of use of the steel and other property which was damaged in an accident, which was the type of risk insured against. A court or jury will have to determine whether these damages are "causally related" to the property damaged by the accident.

## DECISION

The trial court did not err in ruling that the work product exclusions do not apply to Olson's claimed damages. Appellant has failed to show that the trial court erred by refusing to find exclusion (k)(2) prevents coverage. Exclusion (m) does not prevent coverage because the damages resulted from an accident, which was the risk insured against, not faulty workmanship, which is excluded. Exclusion (n) does not apply because H.D. did not provide any products—it only provided services. Exclusion (o) is inapplicable because the quality of the work itself performed by H.D. was not the cause of the damages. It was the insured's negligence in placing heavy materials on the partially completed structure that caused the accident. This is the type of risk general liability coverage is intended to insure against. Western owes its insured the duty to defend and indemnify it against Olson's claims.

Affirmed.