1997 SD 9

Steve ALVERSON, Plaintiff and Appellee,

v.

NORTHWESTERN NATIONAL CASUALTY COMPANY, Defendant and Appellant.

Nos. 19296, 19306.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1996.

On Reassignment Sept. 9, 1996.

Decided Feb. 12, 1997.

Rehearing Denied March 20, 1997.

David R. Gienapp and Chris S. Giles of Arneson, Issenhuth, Gienapp & Blair, Madison, for plaintiff and appellee.

William C. Garry of Cadwell, Sanford & Deibert, Sioux Falls, for defendant and appellant.

SABERS, Justice (on reassignment).

[¶ 1] Summary judgment was granted to Alverson on the basis that the insurance policy issued by Insurer provided coverage for certain property damage caused by Alverson in his masonry business. Insurer appeals. We reverse and hold that the exclusion for property damage when it is caused by "your work" is unambiguous. By notice of review, Alverson argues that his summary judgment motion could have been granted by applying the doctrine of reasonable expectations. We disagree and affirm the denial of summary judgment on that issue.

FACTS

[¶ 2] Alverson subcontracted with Schmidt Construction (Schmidt) to perform masonry veneer and fireplace work on a new residence under construction in Sioux Falls. The masonry work left a residue of dirt and mortar on the house and its windows. Alverson's employees applied an acid solution with a nylon scrub brush to remove this residue. When they scoured the windows, sand granules in the mortar left permanent scratches in the glass. Schmidt withheld $10,546.16 from the final payment due Alverson to cover the expense of replacing the windows.

[¶ 3] Alverson filed a claim under his commercial general liability insurance policy (CGL). Insurer denied coverage on the basis that the loss was specifically excluded under the policy. Alverson sued and both parties filed motions for summary judgment. Alverson's motion was granted and Insurer appeals. By notice of review, Alverson argues that the doctrine of reasonable expectations provides coverage under the policy as an alternative ground for summary judgment.

## STANDARD OF REVIEW

■ [¶ 4] Our standard of review on a motion for summary judgment is well settled:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat'l Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993) (citation omitted). There are no genuine issues of material fact in this case. Therefore, summary judgment will be affirmed if the trial court has correctly decided the legal issues before it. *Farmland Ins. Cos. v. Heitmann*, 498 N.W.2d 620, 622 (S.D.1993) (citing *Stroh v. Town of Java*, 463 N.W.2d 923 (S.D.1990); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987); *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558 (S.D. 1986)).

■ [¶ 5] The construction of a written contract is a question of law. *Bell v. East River Elec. Power Coop. Inc.*, 535 N.W.2d 750, 754 (S.D.1995); *American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990);

*Dirks v. Sioux Valley Empire Elec. Ass'n, Inc.*, 450 N.W.2d 426, 427–28 (S.D.1990). We review questions of law de novo. *Aadland v. St. Luke's Midland Regional Medical Ctr.*, 537 N.W.2d 666, 668 (S.D.1995); *King v. John Hancock Mut. Life Ins. Co.*, 500 N.W.2d 619, 621 (S.D.1993).

## [¶ 6] 1. WHETHER THE POLICY EXCLUDES COVERAGE FOR ALVERSON'S LOSS

■ [¶ 7] Both parties claim the language of the policy exclusion is unambiguous, yet each reaches a different conclusion as to its meaning. Therefore, we must first determine whether the exclusion is ambiguous. The CGL policy excludes coverage for certain property damage:

2. Exclusions.

This insurance does not apply to:

. . . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

[¶ 8] "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *City of Watertown v. Dakota, Minnesota & E. R.R. Co.*, 1996 SD 82, ¶ 13, 551 N.W.2d 571, 574 (citing *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D.1990)). As we stated in *Olson v. United States Fid. & Guar. Co.*, 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200, specific rules of construction apply to the interpretation of an insurance policy:

Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation.... This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

*Id.* (citing *Rogers v. Allied Mutual Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994)). "[A]n am-

biguity is not of itself created simply because the parties differ as to the interpretation of the contract." *Johnson v. Johnson,* 291 N.W.2d 776, 778–79 (S.D.1980) (citations omitted). "An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *St. Paul Fire & Marine Ins. Co. v. Schilling,* 520 N.W.2d 884, 887 (S.D.1994) (citations omitted).

[¶ 9] The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." "Your work" is defined as "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations."

[¶ 10] Alverson and his employees worked on the windows to remove the mortar from them. The key fact is that the windows were not damaged before the cleaning and could have been cleaned without being damaged. Alverson cleaned some of the windows himself and they were neither scratched nor damaged. His employees cleaned the other windows and scratched and damaged them. His employees did the work incorrectly and the windows had to be replaced.

[¶ 11] Section (6) excludes damage to *any* property, which includes the windows, that must be replaced because "your work" was incorrectly performed on it. The trial court concluded that the exclusion is ambiguous because the term "your work" is subject to two interpretations. However, "your work" is defined in the policy as "work or operations performed by you or on your behalf." The window cleaning was "work" done "by" Alverson and his employees and it was done

as part of the masonry contract. While work on windows was not included in the masonry contract, it became Alverson's work to clean them incidental to the contract. This was admitted by Alverson in his deposition. Therefore, "This insurance does not apply to: (6) That particular part of any property [the windows] that must be restored, repaired or replaced because 'your work' [window cleaning] was incorrectly performed on it." Accordingly, the exclusion applies and there is no coverage.[1]

## [¶ 12] 2. DOCTRINE OF REASONABLE EXPECTATIONS

[¶ 13] Alverson argues alternatively that the doctrine of reasonable expectations applies in this case and that we should adopt that doctrine.

The doctrine of reasonable expectations directs "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Dairyland Ins. Co. v. Wyant,* 474 N.W.2d 514, 516 (S.D.1991) (quoting Keeton, *Insurance Law Rights At Variance With Policy Provisions,* 83 HarvLRev 961, 967 (1970)). Although this doctrine governs interpretation of insurance contracts in other states, it has not been declared law in South Dakota. *Wyant,* 474 N.W.2d at 516; *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 463 (S.D.1991).

*American Family Mut. Ins. Co. v. Elliot,* 523 N.W.2d 100, 103 (S.D. 1994). As was the case in *Elliot,* we are not confronted with the issue of whether this doctrine might apply to an insurance contract which contained ambiguous language:

The *Lusalon* court found a nearly identical policy exclusion unambiguous and ruled that costs associated with unworkmanlike clean-up, which resulted in the finish paint peeling from the doors and windows, were properly excluded from coverage. *Id.* 498 N.E. 2d at 1374–75 (relying on *Bond Bros., Inc. v. Robinson,* 393 Mass. 546, 471 N.E.2d 1332 ( 1984)).

---

1. For a similar result in similar circumstances, *see Lusalon, Inc. v. Hartford Accident & Indem. Co.,* 23 Mass.App.Ct. 903, 498 N.E.2d 1373, 1374 (1986) *aff'd,* 400 Mass. 767, 511 N.E.2d 595 (1987):

It is not unexpected that mortar will splash on doors and windows in the course of mortaring them in, and, barring contract language to the contrary, we think it stands to reason that it will be a part of the masonry subcontractor's work to clean up the splash.

This Court expresses no opinion whether the doctrine of reasonable expectations would govern construction of an insurance contract if the terms of that contract were ambiguous, or may otherwise lead a policyholder to reasonably, but incorrectly, conclude that coverage existed. As in *Wyant,* that issue is not before us today because we have held that there is nothing ambiguous about this policy. The clear and plain meaning of the terms of the policy read as a whole exclude coverage[.]

*Id.*

[¶ 14] There is nothing ambiguous about the policy exclusion in this case, and therefore, the doctrine of reasonable expectations simply does not apply to this policy language in these circumstances. We affirm on issue 2.

[¶ 15] The damage was excluded under the terms of this policy. We reverse the trial court on issue 1 and remand for judgment in Insurer's favor.

[¶ 16] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 17] AMUNDSON, J., dissents.

AMUNDSON, Justice (dissenting).

[¶ 18] The purpose of a general liability policy is to provide coverage for injury to persons and damage to property. 11 George J. Couch, *Couch on Insurance* § 44:344, at 520–21 (2dEd 1982); *see also Western World Ins. Co. v. H.D. Eng'g Design & Erection Co.,* 419 N.W.2d 630, 634 (Minn.Ct.App.1988).

[¶ 19] First, it must be determined whether the exclusions set forth below are ambiguous. The general liability policy at issue excludes property damage to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[2]

[¶ 20] This general liability policy contains what is called a products liability section. This is a very common practice. Rowland H. Long, *The Law of Liability Insurance* § 11.01, at 11–3 (1996). The injury to products or work exclusion is meant to deny coverage when the insured seeks payment for damage to the insured's product or work, but not for "damage caused by the insured's product or work." *Id.* § 11.09[2], at 11–85 to –86. "Thus the exclusion does not apply where the product or work causes damages to other persons or property." *Id.* § 11.09[2], at 11–86.

[¶ 21] In *Haugan v. Home Indem. Co.,* 86 S.D. 406, 197 N.W.2d 18 (1972), we interpreted a very similar insurance contract compared to the contract in the present case. The policy in *Haugan* was a general liability policy for a construction business. As is with the policy at issue here, there was an exclusion:

(m) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith[.]

*Id.* at 412, 197 N.W.2d at 21–22. This court went on to state:

According to the allegations of the complaint in the principal action the completed hangar building, in its entirety, constituted Haugan's work product. He designed and constructed it. The damages sought by Business Aviation relate solely to Haugan's work product or to work performed by him in the construction of the building. There are no other damages claimed.

*Id.* at 412, 197 N.W.2d at 22. We found the insurance exclusion to be unambiguous. Exclusions j(5) and (6) are similar to this exclusion. The policy clearly excludes property

---

**2.** The policy. defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." "Your work" is defined as "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations."

damage which occurs to Alverson's own work, i.e., the brick. However, the facts in this case leave the terms of this policy ambiguous. In *Haugan,* the insured was the general contractor, responsible for the design and creation of the entire structure. *Id.* at 408, 197 N.W.2d at 20. Alverson was a subcontractor, responsible for the masonry and the veneer. The damage claim here involved windows which were not involved in Alverson's work. These facts leave open the possibility of two interpretations of the exclusions: (1) "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations .…." or (2) "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The exclusions "that particular part" and "your work" are susceptible to at least two meanings: (1) the work that the insured was contracted to perform; or (2) all work actually performed, whether it was contracted for or not. Since the exclusions are ambiguous, we must interpret them. *See American Family Mut. Ins. Co. v. Elliot,* 523 N.W.2d 100, 102 (S.D.1994).

[¶ 22] When a policy is ambiguous, we should liberally construe the policy "in favor of the insured and strictly against the insurer." *Id.* (citing *Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.,* 478 N.W.2d 824, 827 (S.D.1991); *Tri–State Ins. Co. of Minn. v. Bollinger,* 476 N.W.2d 697, 701 (S.D.1991); *McGriff v. United States Fire Ins. Co.,* 436 N.W.2d 859, 862 (S.D.1989)). In insurance contracts, when we deal with terms of exclusion, we strictly construe the terms of the exclusion. *Novak v. State Farm Mut. Auto. Ins. Co.,* 293 N.W.2d 452, 455 (S.D.1980).

[¶ 23] The terms which must be construed in this case are "that particular part" and "your work." Again, in *Haugan* we stated that the exclusion denies coverage "arising out of damage to the work or product of the insured." 86 S.D. at 412, 197 N.W.2d at 22. We went on to quote *Home Indem. Co. v. Miller,* 399 F.2d 78, 84 (8th Cir.1968):

When viewed and considered in the light of the entire contract, and as a part thereof, it is clear that such clause excludes from

liability thereunder any *claim for damages arising from internal defectiveness of the insured's own work product.*

*Id.* (emphasis added). In addition, we cited several other cases which reached the same conclusion: *Geddes & Smith, Inc. v. Saint Paul–Mercury Indem. Co.,* 51 Cal.2d 558, 334 P.2d 881 (1959), *second appeal,* 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (1965); *Volf v. Ocean Accident and Guarantee Corp.,* 50 Cal.2d 373, 325 P.2d 987 (1958); *Liberty Bldg. Co. v. Royal Indem. Co.,* 177 CalDistCtApp 583, 177 Cal.App.2d 583, 2 Cal.Rptr. 329 (1960); *Consumers Constr. Co. v. American Motorists Ins. Co.,* 118 Ill.App.2d 441, 254 N.E.2d 265 (1969); *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P.2d 396 (1962); *Vobill Homes, Inc. v. Hartford Accident & Indem. Co.,* 179 So.2d 496 (La.Ct.App.1965); *Hartford Accident & Indem. Co. v. Olson Bros., Inc.,* 187 Neb. 179, 188 N.W.2d 699 (1971); *Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co.,* 110 NJSuperCt 181, 110 N.J.Super. 181, 264 A.2d 752 (1970); *McGann v. Hobbs Lumber Co.,* 150 W.Va. 364, 145 S.E.2d 476 (1965); *Engine Serv., Inc. v. Reliance Ins. Co.,* 487 P.2d 474 (Wyo.1971). *Haugan,* 86 S.D. at 412–13, 197 N.W.2d at 22.

[¶ 24] The property damage in this case is factually distinguishable from *Haugan.* First, Alverson contracted to perform only masonry work on the house, rather than construction of the entire project. Second, the loss suffered was to the windows, not the contracted masonry work as compared to the contracted work damaged in *Haugan.* In *Haugan* we stated, "However, when the insured's work or product actively malfunctions and *causes damages to other property coverage is afforded."* 86 S.D. at 413, 197 N.W.2d at 22 (emphasis added) (citations omitted).

[¶ 25] Other jurisdictions have dealt with this similar problem. In *Holsum Foods v. Home Ins. Co.,* 162 Wis.2d 563, 469 N.W.2d 918, 920 (Ct.App.1991), *review denied,* 474 N.W.2d 107 (Wis.1991), the court stated:

Home's policy has a clause which is entitled "Exclusion (n)." It denies coverage "to property damage to the named insured's products arising out of such products or any part of such products." The

purpose of the exclusion, a standard exclusion used by the industry, is to prevent the insured from using its products liability coverage as a form of property insurance to *cover the cost of repairing or replacing its own defective products or work.* (Emphasis added.)

The *Holsum* court went on to state: "This 'injury to products or work' exclusion is intended to exclude insurance for *damage to the insured's product or work, but not for damage caused by the insured's product or work.*" *Id.* (emphasis added).

[¶ 26] In *United Properties, Inc. v. Home Ins. Co.,* 311 N.W.2d 689 (Iowa.Ct.App.1981), the insured placed a top coat over an existing asphalt tennis court. The top coat damaged the tennis court so the entire project had to be replaced. The policy excluded from coverage the cost of "inspecting, repairing, replacing, removing, or withdrawing from the market" insured's product. *Id.* at 691. The insurer denied coverage for damage to the asphalt so the insured brought suit and won. The Iowa Court of Appeals held that the asphalt damaged was not insured's "own product," only the top coat was his "own product," therefore coverage was allowed. *Id.*

[¶ 27] The Minnesota Court of Appeals reached the same result when interpreting comparable contract language. In *Western World Ins.,* 419 N.W.2d at 631, a subcontractor provided steel work for a building which collapsed. The insurance policy excluded coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Id.* at 633. "[T]he purpose of comprehensive liability insurance coverage is to provide protection for personal injury or property damage caused by the product only and not for the replacement or repair of the product." *Id.* at 635 (quotations and citations omitted). The *Western World Ins.* court held that this provision did not exclude coverage for damage that occurred to another's property due to the collapse of the steel and mesh wire. *Id.* at 636.

[¶ 28] In *Adler & Nielson v. Insurance Co. of N. Am.,* 56 N.Y.2d 540, 449 N.Y.S.2d 957, 434 N.E.2d 1335, 1336 (1982), the court interpreted a clause which excluded "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof[.]" The insured was a subcontractor responsible for the installation of steel shelf angles on the exterior walls of a concrete building. *Id.* The masonry facing was damaged by the incorrectly installed shelf angles. Ultimately, the insured was allowed to recover for the damage that he caused to other work. *Id.*

[¶ 29] Insurer directs us to four cases which it believes are persuasive. In *Houston Bldg. Serv., Inc. v. American Gen. Fire & Casualty Co.,* 799 S.W.2d 308 (Tex.App. 1990), coverage was denied to a janitorial service which misapplied linseed oil to the doors. The work to the doors was an integral part of the service contract entered into by the janitorial service. *Id.* at 310. In essence, this was "their work." This is factually distinguishable from this case in that Alverson was contracted to do masonry work, not the cleaning.

[¶ 30] The insured in *Vinsant Elec. Contractors v. Aetna Casualty & Sur. Co.,* 530 S.W.2d 76 (Tenn.1975), was contracted to install a circuit breaker in a switchboard. The insured caused a shortage that led to the explosion of the entire switchboard. *Id.* at 76. Coverage was denied for the switchboard because it is "that particular part" of the property "upon which operations are being performed." *Id.* at 78. A circuit is a part of a switchboard. However, we cannot hold that the window in this case was a part of the brick. In addition, in both of these cases exclusions were questions of the quality of the workmanship by the insured. This is strictly a question of negligence by the insured while cleaning up the surrounding area.

[¶ 31] The last two cases are both from Massachusetts and deal with identical insurance contract language which excluded coverage of property damage to "that particular part of any property ... the restoration, repair or replacement of which has been made or is necessary by reason of faulty

workmanship thereon by or on behalf of the insured[.]" *Lusalon, Inc. v. Hartford Accident & Indem. Co.*, 23 Mass.App.Ct. 903, 498 N.E.2d 1373, 1374 (1986), *aff'd*, 400 Mass. 767, 511 N.E.2d 595 (1987); *Bond Bros., Inc. v. Robinson*, 393 Mass. 546, 471 N.E.2d 1332, 1333 (1984). Both of these cases found that the exclusion was unambiguous, for "faulty workmanship" includes all work performed by the insured. *Lusalon*, 498 N.E.2d at 1374; *Bond Bros.*, 471 N.E.2d at 1333–34. This provision is different from "your work" and "that particular work," which mean the work contracted to do and are more limiting than "faulty workmanship," which means all work that is performed by the insured.

[¶ 32] The trial court determined the exclusions "that particular part" and "your work" are "restricted to the work that was actually performed, that being the masonry work by [Alverson]." The cleaning of the mortar off of the windows was incidental to the work performed under the contract and, therefore, was not excluded. As the trial court explained:

> If the masonry contractor puts up a wall and the wall falls down, that's not covered. That's his work. That's the job he contracted to do. The cleaning of the windows is distinguishable, in that it's not something that he built or put together. They clean the windows because their work splattered on to the windows and they had to be cleaned.

[¶ 33] The trial court's determination conforms with our decision in *Haugan.* It is our long-standing rule that "where provisions of an insurance contract are fairly susceptible of different interpretations, the interpretations most favorable to the insured should be adopted." *Dakota Block Co. v. Western Casualty & Sur. Co.*, 81 S.D. 213, 219, 132 N.W.2d 826, 830 (1965) (citations omitted); *see also State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D.1995); *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994); *Kremer v. American Family Mut. Ins. Co.*, 501 N.W.2d 765, 767–68 (S.D. 1993); *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990). I find support for the circuit court's decision in case law and in the policy reasons behind general liability insurance contracts. *See, e.g., Richardson v. East River Elec. Power Co-op.*, 531 N.W.2d 23, 25 (S.D.1995).

[¶ 34] This is not a claim for repair or replacement of masonry or fireplace work of Alverson. The quality of the work itself is not at issue. This is a claim for negligent damage to property installed by another, which was accidentally damaged by Alverson. Thus, it is a tort liability claim which should be covered by this policy. As stated above, the purpose of these exclusions is to prevent the insured from using its general liability/products liability insurance "as a form of property insurance to cover the cost of repairing or replacing its own defective products or work." *Holsum Foods*, 469 N.W.2d at 920 (citations omitted). Under this policy, coverage should be available for the damage to the windows since it is not Alverson's own product, i.e. the brick.

[¶ 35] Therefore, I dissent.