LUSALON, INC. *vs.* THE HARTFORD ACCIDENT AND INDEMNITY
COMPANY & others[1].

Suffolk.   April 9, 1987. — August 17, 1987.

Present: WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Insurance,* General liability insurance, Contractor's insurance, Construction
of policy, Insurer's duty to defend. *Contract,* Insurance.

In a civil action in which a subcontractor on a construction project sought
a declaration that its insurer had a duty to defend and indemnify in an
action brought by the general contractor for damage to another subcon-
tractor's work, the judge correctly ruled, in granting summary judgment
for the insurer, that a provision in the general liability insurance policy
excluding coverage for damage to "that particular part of any property"
needing repair on account of the insured's faulty workmanship excluded
coverage for damage to not only the plaintiff subcontractor's work but
also for damage to other property, where there was no ambiguity in the
policy or uncertainty in the factual circumstances to justify denying
effect to the exclusion. [770-771]

In a civil action in which a subcontractor on a construction project sought
a declaration that its insurer had a duty to defend and indemnify in an
action brought by the general contractor for damage to another subcon-
tractor's work, the judge correctly ruled, in granting summary judgment
for the insurer, that the insurer had no duty to defend where, on the
basis of a statement of agreed facts, there clearly was no coverage under
the policy. [772-774]

CIVIL ACTION commenced in the Superior Court Department
on October 25, 1979.

A motion for summary judgment was heard by *James J.
Nixon,* J., and entry of final judgment was ordered by *William
G. Young,* J.

_____

[1] Sumner Fox, Lusalon's former corporate attorney; Louis Karp, Lusalon's
trial counsel; CBM Insurance Agency, Inc.; and Donald L. Moors, an
insurance agent who operates CBM Insurance Agency.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Peter J. Gagne* (*Lisa H. Harrod* with him) for the plaintiff.

*Joseph J. Walsh* for The Hartford Accident and Indemnity Company.

Liacos, J. On October 25, 1979, Lusalon, Inc. (Lusalon), brought an action under G. L. c. 231A (1984 ed.). Lusalon sought a declaration that The Hartford Accident and Indemnity Company (Hartford), had a duty to defend and to indemnify Lusalon (a masonry subcontractor) in an action brought by Blount Brothers Corporation — Fontaine Bros. (general contractor). This latter action had been brought against Lusalon for damages caused to another subcontractor's work during construction of a high school in Boston.

On April 17, 1984, the case was referred for a pretrial hearing limited to two issues: "1. Does Hartford have an obligation to defend [Lusalon]?" and "2. Does the Hartford policy cover this loss?." The parties submitted a statement of agreed facts consisting of Lusalon's liability policy and a September, 1978, master's report. Hartford moved for summary judgment.[2] A Superior Court judge allowed the motion. He ruled that "Hartford did not provide coverage for losses alleged nor were they obligated to defend." In a memorandum, the judge stated, "There is no dispute in the facts. The insurance furnished was not intended to indemnify the plaintiff for damages resulting because the plaintiff furnished defective materials or workmanship in the cleanup and related work."

Lusalon then moved for entry of final judgment for the other named defendants. The grounds were that Lusalon could not, as matter of law, recover against any of the defendants after the judge had allowed Hartford's motion for summary judgment. Judgment was entered for all defendants, and Lusalon

---

[2] The master's report was rendered in the earlier case between Blount Brothers Corporation — Fontaine Bros. and Lusalon. The case had been referred to the master "facts not final." However, the parties in the present matter did not contest the validity of the master's findings of fact.

appealed. The Appeals Court affirmed,[3] and we allowed Lusalon's petition for further appellate review. We affirm.

The relevant facts are these. On June 2, 1971, Lusalon entered into a contract with the general contractor to furnish and install concrete masonry block and other masonry products at the construction site. While installing concrete block, Lusalon accidentally splattered mortar on adjacent metal door and window frames. At the general contractor's direction, Lusalon cleaned the frames. When the painting subcontractor later painted the frames, the finish paint peeled, due to Lusalon's failure properly to remove the muriatic acid they had used as a cleaning agent. The general contractor repaired the frames at a cost of $58,605.91. Lusalon sued to recover its subcontract balance of $55,751.16. The general contractor counterclaimed, alleging that Lusalon caused damage to numerous door frames by removing the mortar "in a poor and unworkmanlike manner." The master concluded that the finish paint failed because of Lusalon's "unworkmanlike . . . use of dilute muriatic acid." He found that Lusalon owed the general contractor $2,854.75, plus interest, the difference between the cost of repair borne by the general contractor and the remainder due to Lusalon under the contract.

Lusalon engaged new counsel who requested that Hartford assume the defense of the counterclaim without reservation and pay all expenses necessary for preparation and jury trial of the counterclaim. Hartford refused. Hartford noted that,

[3] The Appeals Court held that the broad form endorsement of Lusalon's policy excluded coverage but did not address the issue of Hartford's duty to defend. *Lusalon, Inc.* v. *Hartford Accident & Indem. Co.,* 23 Mass. App. Ct. 903, 904 (1986). Lusalon requested rehearing on the issue whether Hartford had a duty to defend the action upon request, regardless whether it would be liable to indemnify Lusalon under the policy. The Appeals Court issued an amended opinion, holding that "[a]ny duty that Hartford might otherwise have had to defend against the general contractor's counterclaim . . . was forfeited by Lusalon's failure to notify Hartford and to forward the counterclaim until after the case had been tried to the master and adverse findings had been entered by him" (citations omitted). *Id.* at 905. Concluding that this delay was "prejudicial as matter of law," *id.,* the Appeals Court affirmed the Superior Court judge on the issue of Hartford's duty to defend as well.

contrary to policy requirements, Lusalon had failed to give notice of the incident and to forward litigation papers until the suit had been pending for several years. Further, Hartford indicated that Lusalon's policy excluded coverage. Following Hartford's disclaimer of coverage and of an obligation to defend, Lusalon and the general contractor entered into a settlement agreement.

1. *Coverage.* The provision of the comprehensive general liability policy at issue in this case, exclusion (y) (2) (d) (iii), eliminates coverage for property damage to "that particular part of any property . . . the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." Lusalon claims that the damage caused to the finish paint was covered by its broad form policy and not excluded by virtue of exclusion (y) (2) (d) (iii). In essence Lusalon argues that the exclusion is inapplicable because "that particular part of any property" refers exclusively to Lusalon's work product, which did not include the frames or the painted surface of the frames. The Superior Court judge disagreed and ruled that the exclusion did apply. The Appeals Court agreed with the judge.[4]

In *Bond Bros.* v. *Robinson,* 393 Mass. 546, 547-548 (1984), we interpreted the identical exclusionary language so as to deny coverage where a subcontractor's faulty installation of reinforced steel and welded wire mesh (rebar work) caused the failure of a concrete foundation poured by the general contractor.[5] Just as the "unworkmanlike" cleanup by Lusalon led directly to the failure of the paint in this case, the faulty rebar work led to the structural instability of the foundation

---

[4] The Appeals Court stated, "It is not unexpected that mortar will splash on doors and windows in the course of mortaring them in, and, barring contract language to the contrary, we think it stands to reason that it will be a part of the masonry subcontractor's work to clean up the splash." *Lusalon, Inc.* v. *Hartford Accident & Indem. Co., supra* at 904.

[5] As the Supreme Court of New Jersey explained, "The limitations on coverage are set forth in the exclusion clauses of the policy, whose function it is to restrict and shape the coverage otherwise afforded." *Weedo* v. *Stone-E-Brick, Inc.,* 81 N.J. 233, 237 (1979).

which required remedial work in *Bond Bros*. We held in *Bond Bros*. that exclusion (y) (2) (d) (iii), standing alone, denies coverage for faulty workmanship of the character involved in the subcontractor's rebar work. We reached that conclusion because we saw no ambiguity in the policy, or uncertainty in the circumstances, which would justify denying effect to the explicit exclusion. Our holding in *Bond Bros*. controls the outcome in this case. The factual situations are analogous; and the exclusion is identical.[6] See also *Frankel* v. *J. Watson Co.*, 21 Mass. App. Ct. 43 (1985). "[C]overage under the exclusionary endorsement is dependent upon the factual situation." *Vinsant Elec. Contractors* v. *Aetna Casualty & Sur. Co.*, 530 S.W.2d 76, 78 (Tenn. 1975). In this case Lusalon did not dispute the master's finding that "[i]t was Lusalon's responsibility to remove the waste splatterings from the door frames and certain window frames," and that "[t]he failure of the finish paint on the door and certain window frames was caused by the unworkmanlike manner" of Lusalon's removal of those splatterings. There was no error in entry of summary judgment for Hartford on the issue of coverage.[7]

---

[6] Other courts have interpreted this exclusionary language to reach the same conclusion. In *Rafeiro* v. *American Employers' Ins. Co.*, 5 Cal. App. 3d 799, 808 (1970), considering identical language, the court concluded that "[i]t appears from the above provisions that the insurance furnished, unlike malpractice insurance, was not intended to indemnify the contractor . . . for direct damages resulting because the contractor furnished defective materials or workmanship." Accord *St. Paul Fire & Marine Ins. Co.* v. *Coss,* 80 Cal. App. 3d 888, 894 (1978); *Harrison Plumbing & Heating* v. *New Hampshire Ins. Group,* 37 Wash. App. 621, 626 (1984).

[7] Lusalon claims that it is unreasonable to construe the broad form liability insurance to exclude this damage because, it alleges, the damage would be covered under the standard lower-priced exclusion. Lusalon, however, fails to demonstrate a factual basis for this claim, and Hartford disagrees with this assertion. The issue of Lusalon's "reasonable expectations" is not developed on this record.

While this court may be moving toward acceptance of the "reasonable expectations" doctrine, see *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.,* 396 Mass. 103, 107 (1985), and *Bond Bros., supra* at 551, that doctrine requires some basis for its application. See *Markline Co.* v. *Travelers Ins. Co.,* 384 Mass. 139, 147 (1981) (Liacos, J., dissenting) ("The interpretation of the circumstances of the plaintiff's entering the contract are highly material"); see also *Bond. Bros., supra* at 555 (Abrams, J., dissenting) ("the insurer concedes that '[a] fast reading' would appear to

2. *The duty to defend.* Lusalon argues that Hartford owed Lusalon a legal defense even if the application of exclusion (y) (2) (d) (iii) ultimately precluded recovery for the damage.

An insurance company's obligation to defend against a liability claim is determined by the allegations in the complaint. "It is settled in this jurisdiction, and generally elsewhere,[8] that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible" of an interpretation that they state . . . a claim covered by the policy terms, the insurer must undertake the defense. See *Vappi & Co.* v. *Aetna Casualty & Sur. Co.,* 348 Mass. 427, 431 (1965); *Magoun* v. *Liberty Mut. Ins. Co.,* 346 Mass. 677, 681-682 (1964); *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 166 (1983)." *Continental Casualty Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 146-147 (1984), quoting *Sterilite Corp.* v. *Continental Casualty Co.,* 17 Mass. App. Ct. 316, 318 (1983).

The allegations in the counterclaim can be summarized as follows. Lusalon, "in the performance of [its] contract," performed certain work in a poor and unworkmanlike manner which caused damage to numerous metal door frames. The general contractor directed Lusalon to repair the damage, but Lusalon failed, and refused, to do so. Although the performance of such corrective work was properly Lusalon's obligation, the general contractor completed the corrective work at a cost of $58,605.91.

The allegations clearly complain of Lusalon's work in the performance of its contract. The gist of Lusalon's argument,

grant coverage"). Additionally, the court in *Bond Bros.* stated, as to an identical policy, that application of the doctrine of reasonable expectations would produce no different result. Thus, notwithstanding the dissenters' views as to the validity of the doctrine (to which view the author adheres), the issue on this policy is foreclosed by the position of the court in *Bond Bros.* and the lack of any basis in this record to justify a contrary result.

[8] See, e.g., *Great Lakes Container Corp.* v. *National Union Fire Ins. Co.,* 727 F.2d 30, 34 (1st Cir. 1984), quoting *United States Fidelity & Guar. Co.* v. *Johnson Shoes, Inc.,* 123 N.H. 148, 151-152 (1983).

however, is that the allegations concern tasks outside its contract responsibilities and damage to property which was not part of Lusalon's work product. At the time the issue of a duty to defend was put before the motion judge, this claim was precluded by the master's findings included in the statement of agreed facts. The master found, in relevant part, that it was Lusalon's responsibility to remove the waste splatterings from the frames. According to the master, after applying an excessive amount of acid, Lusalon failed adequately to rinse the frames. The master also found that implicit in Lusalon's responsibility to remove waste mortar from the frames was the requirement to perform the task in a workmanlike manner. In essence, the master found that, contrary to Lusalon's characterization, Lusalon's work did not include cleaning up the mortar which its employees splattered on the door and window frames.

Considering the questions of coverage and duty to defend on a motion for summary judgment, Mass. R. Civ. P. 56, 365 Mass. 824 (1974), the judge was entitled to determine that the question of coverage was so clear from the record that Hartford's duty to defend was also a proper question for summary judgment.[9] "When . . . the allegations lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate." *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 168 (1983). See also *Harrison Plumbing & Heating, Inc.* v. *New Hampshire Ins. Group,* 37 Wash. App. 621, 623 (1984). In this case, the judge did not err in ruling that Hartford had no duty to defend where he found that "[t]he insurance furnished was not intended to indemnify the plaintiff for damages resulting because the plaintiff furnished defective . . . workmanship in the cleanup and related work."

This court has ruled, on essentially analogous facts, that there is "no ambiguity in the policy or uncertainty in the circumstances

---

[9] The Appeals Court appears to have concluded that Hartford had no duty to defend Lusalon against the general contractor's counterclaim because of lack of notice. We reach the same result on different grounds. Our review of the transcript of the summary judgment hearing indicates that the issue of notice was deliberately, and quite specifically, excluded from that proceeding. The judge stated, "The question of whether notice was appropriate is not a matter that is sent to me."

which would justify denying effect to the explicit exclusion" (exclusion [y] [2] [d] [iii], the same as is at issue here). *Bond Bros.* v. *Robinson,* 393 Mass. 546, 548 (1984).

The judgment of the Superior Court judge is affirmed.

*So ordered.*