### COVENANT INSURANCE COMPANY, Plaintiff,

### and

### Atlantic Mutual Insurance Company, Intervenor–Plaintiff,

### v.

### FRIDAY ENGINEERING, INC. and Friday Precision Moulding, Inc., Robert Smith and Elio Centoni, Individually and as Trustees of the E and R Realty Trust and Century Machine Co., Inc., Ralph W. Crocker, Helen Crocker and Keith Doty as Trustees of the PGA Realty Trust, and Linpro Wilmington Industrial Limited Partnership, Defendants.

### Civ. A. 88–2547–MA.

United States District Court,
D. Massachusetts.

Aug. 7, 1990.

Gallagher & Gallagher, John P. Graceffa, Boston, Mass., for plaintiff.

Richard L. Neumeier, Parker, Coulter Daley, for Atlantic Mut. Ins.

John A. Houlihan, Andrew L. Matz, Edwards & Angell, Boston, Mass., for Ralph Crocker, Helen Crocker and Keith Doty.

Aaron A. Gilman, Asoian & Tully, Andover, Mass., Stuart T. Rossman, Gaston & Snow, Stephen D. Anderson, Arthur P. Kreiger, Anderson & Kreiger, Boston, Mass., for Friday Engineering, Inc. and Friday Precision Mould.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff, Covenant Insurance Company ("Covenant"), has filed a motion to lift the stay of proceedings in this lawsuit and for entry of summary judgment. Each of the defendants, Friday Engineering, Inc. and Friday Precision Moulding, Inc. ("Friday"), Robert Smith and Elio Centoni, individually and as trustees of the E and R Realty Trust and Century Machine Co. ("Century"), Ralph W. Crocker, Helen Crocker and Keith Doty as trustees of the PGA Realty Trust ("PGA"), and Linpro Wilmington Industrial Limited Partnership ("Linpro"), has filed timely opposition. For the reasons set forth below, the plaintiff's motion to lift the stay order and for entry of summary judgment is granted.

### I.

On November 16, 1989, the court issued an order staying all proceedings in this declaratory judgment action pending a resolution by the Massachusetts Supreme Judicial Court ("SJC") of relevant questions certified to it pursuant to *In re Acushnet River & New Bedford Harbor: Proceedings Re Alleged PCB Pollution*, 725 F.Supp. 1264 (D.Mass.1989). *See* Memorandum and Order of November 16, 1989 ("Stay Order").[1] The SJC addressed these certified questions and filed its decision on June 14, 1990. *See Lumbermens Mut. Casualty Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 555 N.E.2d 568 (1990).

The Stay Order, as well as the defendant Friday's motion to stay request, was expressly contingent upon an SJC ruling in the *In re Acushnet River* case. In light of the *Lumbermens* decision, the order staying all proceedings is properly lifted, and the plaintiff's motion for summary judgment is now before the court.[2]

---

1. The court notes that after the November 16, 1989 Stay Order, the Atlantic Mutual Insurance Company ("Atlantic") intervened as plaintiff and subsequently filed a motion for summary judgment against its insured, PGA, and the other defendants. On June 11, 1990, this court ruled that the Stay Order encompassed all case proceedings and that the defendants did not yet need to respond to Atlantic's summary judgment motion. In addition, Atlantic has filed no motion to lift the Stay Order. Although the Covenant and Atlantic complaints do present several overlapping arguments and issues, the intervenor-plaintiff's claim is not encompassed within this order.

2. Friday, the defendant insured by Covenant, opposes only the plaintiff's motion for summary judgment; it does not contest the lifting of the Stay Order. However, the Century, PGA and Linpro defendants oppose the removal of the Stay Order until a decision on the merits is reached in the underlying state court litigation.

## II.

The factual and procedural history of this case outlined in the November 16, 1989 Stay Order is adopted by the court and need not be reiterated in its entirety here. *See* Stay Order at 1–6.

Covenant seeks a declaratory judgment regarding its duties to indemnify and defend Friday pursuant to its Comprehensive General Liability ("CGL") and Commercial Umbrella Liability ("Umbrella") insurance policy provisions. Under the operative CGL language,[3] Covenant is obligated to provide insurance coverage for bodily injury and property damage *excluding*:

> (f) ... bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.* (emphasis added).[4]

Governed by Massachusetts law, the parties differed as to the proper interpretation of the critical phrase "sudden and accidental." *See* Stay Order at 5–6. The SJC has decisively resolved this issue.

In *Lumbermens,* the SJC held that the word "sudden" in this context "must have a temporal aspect to its meaning, and not just the sense of something unexpected." *Lumbermens,* 407 Mass. at 680, 555 N.E.2d at 572. Expanding on this ruling, the *Lumbermens* court stated:

> We hold, therefore, that when used in describing a release of pollutants, 'sudden' in conjunction with 'accidental' has a temporal element. The issue is whether the release was sudden. The alternative

The court rejects this contention for two reasons. First, the Stay Order was granted solely to await the SJC's response to the certified questions in *In re Acushnet River.* Second, the court's analysis is narrowly tailored to the application of the "sudden and accidental" exception within Covenant's pollution exclusion insurance policy clause. Accordingly, this order does not foreclose the underlying state court issue regarding the extent, if any, of Friday's alleged contamination of the Linpro property.

is that it was gradual. If the release was abrupt and also accidental, there is coverage for an occurrence arising out of the discharge of pollutants.

*Id.* at 680, 555 N.E.2d at 572.

Rejecting the "unexpected and unintended" interpretation of the exception to the pollution exclusion clause, which the defendants here had advocated in their summary judgment briefs, the SJC emphasized that "only an abrupt discharge or release of pollutants falls within the exception." *Id.* at 681, 555 N.E.2d at 572.

### A.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party, however, "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The issue at this summary judgment stage is whether sufficient evidence exists from which a reasonable trier of fact could find that there was a "sudden and accidental" pollution occurrence under the terms of the Covenant insurance policies governing Friday. Covenant contends that Friday discharged varying amounts of 1,1,1–tri-

**3.** The Covenant Umbrella insurance policy also contains a similar pollution exclusion clause. *See* Stay Order at 4 n. 4.

**4.** The court notes that in its November 16, 1989 memorandum, the word "not" was inadvertently omitted from the language of the "sudden and accidental" exception to the CGL pollution exclusion clause. *See* Stay Order at 4.

chloroethane and other solvents into an underground septic system during the regular course of its business operations over a six year period, thereby contributing to the contamination of the Linpro property. In a letter dated December 10, 1986, an environmental consultant group, Haley and Aldrich, Inc., informed Linpro that a field evaluation and investigative study had indicated that Friday was a probable source of the volatile organic contamination at the Linpro site. On April 13, 1987, an environmental consultant engaged by PGA, Gulf of Maine Research, Inc., notified Friday by letter that a site inspection had revealed that usage of 1,1,1–trichloroethane by Friday was unregulated and that continued similar usage would lead to additional contamination. Friday stored 1,1,1–trichloroethane in fifty-five gallon drums at the rear of the facility and in numerous small buckets at various individual work stations. Covenant alleges that Friday's routine business practices, including employee washing and facility cleanup procedures, resulted in the discharge of various, small amounts of degreasing agent residue into the septic system over a prolonged period of time.

Friday denies that it discharged any chemicals or chemical waste that caused or contributed in any manner to the contamination of the Linpro property. Friday admits that machinists within their facility used 1,1,1–trichloroethane and other degreasing agents as part of their normal, routine business practices over an approximate six year period, but Friday contends that, at all times, the company believed that its use, storage and disposal of any such chemical waste complied completely with all governmental regulations. Friday also admits that there have been no natural catastrophes, no ruptured tanks and no accidents resulting in any chemical spillage at their facility during the relevant time period. Additionally, Friday challenges the factual underpinnings of Covenant's complaint by disputing, *inter alia*, the number of unaccounted for gallons of chlorinated solvent, the physical properties of the pollutant chemicals themselves, and certain alleged shop cleanup and storage procedures. *See also* Stay Order at 4–5.

Far from asserting that a "sudden and accidental" pollution occurrence happened on their premises, an occurrence which would trigger the coverage provisions under the Covenant insurance policies, Friday denies discharging any chemicals which caused or contributed to the Linpro property contamination and further argues that Covenant has not proved that the discharge of hazardous materials, if any, by Friday occurred gradually rather than suddenly on one or two single occasions.

The defendants err by resting on the argument that Covenant has failed to show that the alleged discharge of pollutant chemicals by Friday could not have occurred in a "sudden and accidental" manner as characterized under the proper *Lumbermens* standard. As this district court has recognized, "[t]he burden of establishing that the occurrence ... comes within the 'sudden and accidental' exception to the pollution exclusion rests with the [insured]." *A. Johnson & Co., Inc. v. Aetna Casualty and Sur. Co.*, 741 F.Supp. 298 (D.Mass.1990) (citing *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1328–29 (E.D.Mich.1988), *reconsideration denied*, 720 F.Supp. 597 (E.D.Mich. 1989); *Fischer & Porter Co. v. Liberty Mut. Ins. Co.*, 656 F.Supp. 132, 140 (E.D. Pa.1986); 19 G. COUCH, COUCH ON INSURANCE § 79:385 (2d ed. 1983)). The *A. Johnson* court, applying Maine law, held that an insurer had no duty to indemnify where the insured had not alleged, much less established, any abrupt event sufficient to trigger the "sudden and accidental" exception to the pollution exclusion clause. *A. Johnson*, at 305.

Like the insured in *A. Johnson*, Friday has not put forth any evidence or argument of a "sudden and accidental" pollution occurrence. Conversely, Friday denies the occurrence of any pollutant chemical discharge at their facility. There is no evidence on the record that the required "abrupt discharge or release of pollutants," *see Lumbermens*, 407 Mass. at 681, 555 N.E.2d at 572, occurred to activate the

"sudden and accidental" exception to the pollution exclusion clause. *See also Great Lakes Container Corp. v. Nat'l Union Fire Ins. Co.*, 727 F.2d 30, 33–34 (1st Cir. 1984) (holding that pollution and contamination occurring as a concomitant of regular business activity falls squarely within the pollution exclusion clause).

The defendants urge, for reasons of fairness and judicial economy, that a declaratory judgment not be issued by this court since the question of Friday's liability is central to the pending state court litigation. Undoubtedly, genuine factual disputes remain as to the extent, if any, of Friday's alleged pollution and contamination of the Linpro property. These issues have not been foreclosed. All that has been decided by this court at this juncture is that there is not sufficient evidence for a reasonable jury to find that there was a "sudden and accidental" pollution occurrence at the Friday facility. Accordingly, the pollution exclusion clause applies and Covenant has no duty to indemnify the insured.

### B.

In *Lumbermens,* the SJC generally approved of a declaratory judgment proceeding in order to resolve an insurer's duty to defend. *Lumbermens,* 407 Mass. at 685–86, 555 N.E.2d at 575.

Under Massachusetts law, "[a]n insurance company's obligation to defend against a liability claim· is determined by the allegations in the complaint." *Lusalon, Inc. v. Hartford Accident & Indem. Co.,* 400 Mass. 767, 772, 511 N.E.2d 595, 598 (1987). "[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible'

of an interpretation that they state ... a claim covered by the policy terms, the insurer must undertake the defense." *Id.* at 772, 511 N.E.2d at 598 (citations omitted). Covenant's duty to defend Friday is "distinct from and of broader scope than the further obligation to indemnify the insured against judgments obtained against it within the policy coverage." *Sterilite Corp. v. Continental Casualty Co.,* 17 Mass. App.Ct. 316, 318 n. 4, 458 N.E.2d 338, 341 n. 4 (1983), *review denied,* 391 Mass. 1102, 459 N.E.2d 826 (1984). Nevertheless, " '[w]hen ... the allegations lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate.' " *Lusalon,* 400 Mass. at 773, 511 N.E.2d at 598–99 (quoting *Terrio v. Mc-Donough,* 16 Mass.App.Ct. 163, 168, 450 N.E.2d 190, 194 (1983), *review denied,* 390 Mass. 1102, 453 N.E.2d 1231 (1983)). Furthermore, the court is "entitled to determine that the question of coverage [is] so clear from the record that [the insurer's] duty to defend [is] also a proper question for summary judgment." *Lusalon,* 400 Mass. at 773, 511 N.E.2d at 598 (footnote omitted).

Since it has not been established that a "sudden and accidental" chemical discharge occurred at the Friday site, the allegations against the insured lie squarely within the pollution exclusion clause and expressly outside the policy coverage. In light of this finding, Covenant is obligated neither to indemnify nor to defend Friday. *See Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.,* 883 F.2d 1092, 1099 (1st Cir.1989) (holding that no insurer's duty to defend arose where it could not be "tenably argued" that the chemical discharge was of the type covered by the exception to the governing pollution exclusion clause).[5]

---

5. *See also Great Lakes,* 727 F.2d at 34 (applying New Hampshire law and finding no duty to defend or indemnify the insured where there was no "sudden and accidental" discharge alleged). In *Great Lakes,* the First Circuit noted, " 'We draw a distinction, however, between groundless suits giving rise to the duty to defend, and actions which, even if successful, would not be within the policy and against which the insurer has no duty to defend.' " *Id.*

at 34 (quoting *United States Fidelity & Guar. Co., Inc. v. Johnson Shoes, Inc.,* 123 N.H. 148, 152, 461 A.2d 85, 87 (N.H.1983)).

*See also United States Fidelity and Guar. Co. v. Star Fire Coals, Inc.,* 856 F.2d 31, 35 (6th Cir. 1988) (applying Kentucky law and finding no duty to defend or indemnify the insured where there was no "sudden and accidental" discharge alleged).

### III.

Having determined that the pollution exclusion clause applies to relieve Covenant of its duties to indemnify and defend Friday, this issue is dispositive of the second argument in the plaintiff's motion for summary judgment regarding the definition of covered damages.

In accordance with the above opinion, the plaintiff's motion to lift the stay order and for entry of summary judgment is granted.

SO ORDERED.