The **AETNA CASUALTY &**
**SURETY CO., Plaintiff,**

v.

Edward M. **CLASBY, Defendant.**

**Civ. A. No. 90–11462–S.**

United States District Court,
D. Massachusetts.

Dec. 4, 1991.

Richard Joseph Saletta, Roche, Carens & Degiacomo, Boston, Mass., for plaintiff.

Paul Markham, Boston, Mass., for defendant.

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

The plaintiff, Aetna Casualty & Surety Company ("Aetna"), brings this declaratory judgment action based on diversity of citizenship seeking a determination of its non-liability to defendant, Edward M. Clasby ("Clasby"), under a pension and welfare fiduciary responsibility insurance policy. At issue is whether Aetna owes a duty to defend or a duty to indemnify Clasby, a

defendant in the following two actions before this court: *Framingham Union Hospital, Inc. v. The Travelers Insurance Company*, No. 89–0209–S (D.Mass. filed Jan. 31, 1989) (the "Hospital" case); *Dole v. Framingham Union Hospital, Inc.*, No. 89–1936–S (D.Mass. filed Sept. 5, 1989) (the "Department of Labor" or "DOL" case). Clasby notified Aetna of the underlying actions in the fall of 1989 and requested that he be "afforded all benefits" under the policy. Aetna undertook Clasby's legal defense in the underlying actions, but only under a full reservation of its rights to challenge Clasby's claim of coverage.

Aetna now moves for summary judgment, pursuant to Fed.R.Civ.P. 56(a) ("Rule 56(a)"). Accordingly, I must view the record in the light most favorable to the opponent of the motion and must indulge all inferences favorable to that party. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). Summary judgment is warranted only if the moving party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party, however, "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

### Background

Both underlying actions allege that Clasby and others violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 by causing the employee benefit plan (the "Plan") for Framingham Union Hospital ("FUH") to engage in prohibited transactions under ERISA. Specifically, the underlying actions allege that Clasby and others caused FUH or the Plan to invest in life insurance policies issued by the Travelers Insurance Company

("Travelers"), for which Clasby's family owned insurance agency, C.T. Garrahan Insurance Agency, Inc. ("C.T. Garrahan"), received substantial secret commissions and expense reimbursement allowances ("ERA's") from Travelers, in violation of ERISA § 1104 and § 1106. The allegations and facts in both the Hospital and the DOL case are more fully set forth in *Framingham Union Hosp., Inc. v. Travelers Ins. Co.*, 721 F.Supp. 1478 (D.Mass.1989) (deciding motions to dismiss) and *Framingham Union Hospital, Inc. v. Travelers Insurance Co.*, 744 F.Supp. 29 (D.Mass.1990) (deciding motions for partial summary judgment).

Except for Clasby and C.T. Garrahan, all of the parties to both underlying actions have entered into a settlement for which partial consent judgments were entered in March 1990. In July 1990, I disposed of a number of motions affecting Clasby and C.T. Garrahan. *See* 744 F.Supp. at 31–35. All that is left of the DOL action is a claim under ERISA § 1132(a)(5) for equitable relief against Clasby and C.T. Garrahan as parties in interest who benefitted from prohibited transactions as defined by ERISA § 1106(a). All that remains in the Hospital action are counts one, two, and twelve.

Count one of the Hospital action alleges a breach of fiduciary duty to the Plan by Clasby under ERISA § 1106(b) and § 1104(a)(1)(B) by causing the Plan to engage in prohibited transactions involving the purchase, renewal, or conversion of life insurance, and by concealing facts concerning his and C.T. Garrahan's self-dealing in connection with the insurance program from 1982 through September 1988. Count two parallels the remaining DOL claim, seeking equitable relief from Clasby and C.T. Garrahan pursuant to ERISA § 1132(a)(3)(B)(i), and alleging that Clasby and C.T. Garrahan are parties in interest who have benefitted from prohibited transactions under § 1106(a). Finally, count twelve charges Clasby with violations of Mass.G.L. c. 93A, alleging that Clasby engaged in unfair or deceptive acts through misrepresentations and omissions that induced FUH or the Plan to engage in the purchase and conversion of the life insur-

ance policies, while Clasby concealed the personal gain he received from such transactions.

*The Policy*

Under Section I of Aetna's fiduciary responsibility insurance policy, Aetna agreed to pay "all sums which the Insured shall become legally obligated to pay as Damages on account of any claim made against the Insured for any Wrongful Act and the Company shall have the right and duty to defend such claim against the Insured seeking such Damages...." A "Wrongful Act" is specifically defined under Section IV of the Aetna policy as the following:

(1) 'Wrongful Act' means a breach of fiduciary duty by the Insured in the discharge of duties as respects the Trust or Employee Benefit Plan designated in the Declarations; the term includes any negligent act, error or omission of the Insured in the "Administration" of "Employee Benefits".

However, Section II of the Aetna policy sets forth a number of exclusions:

This insurance does not apply to any claim:

. . .

(7) Arising out of the Insured gaining in fact any personal profit or advantage to which such Insured was not legally entitled or for the return by the Insured of any remuneration paid in fact to such Insured if payment of such remuneration shall be held by the courts to have been in violation of law.

Because of his former status as both an officer of FUH and a trustee of the Plan Clasby qualifies as an "Insured" under the Plan's fiduciary responsibility insurance issued by Aetna.[1] Aetna does not dispute that Clasby is an Insured under the policy. Rather Aetna argues that Clasby is barred from recovery under the policy because the underlying complaints do not allege a Wrongful Act as defined by the policy, and that the claims arise out of Clasby gaining a personal profit or advantage to which he was not legally entitled, thus triggering exclusion seven.

Clasby admits that "C.T. Garrahan received commissions from the purchase of the life insurance policies which resulted in some financial benefit to him." On the uncontradicted evidence, C.T. Garrahan received the following undisclosed commissions from Travelers as a result of the life insurance transactions Travelers conducted for the Plan: $335,534 in 1982 and 1983 combined, $283,849 in 1984, $23,740 in 1985, $22,640 in 1986, $21,337 in 1987, and $20,388 in 1988. Clasby also admitted at his deposition that the commissions paid to C.T. Garrahan indirectly increased his salary in some years, as well as the compensation of some of his family members employed by C.T. Garrahan. Clasby denies Aetna's claim that he was not legally entitled to that personal profit or advantage, within the meaning of exclusion seven of the policy.

*Discussion*

■■■ In this diversity action, I must apply the choice of law rules of Massachusetts as the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Massachusetts has adopted the "most significant relationship" analysis exemplified by the Restatement (Second) of Conflict of Laws (1971) ("Second Restatement"). *Bi–Rite Enterprises, Inc. v. Bruce Miner Co.*, 757 F.2d 440, 442 (1st Cir.1985). Since Massachusetts is the principal location of the insured risk under Aetna's policy, I find that Massachusetts law governs the insurance policy at issue. *See* Second Restatement § 193; *A. Johnson & Co. v. Aetna Cas. and Sur. Co.*, 741 F.Supp. 298, 300 (D.Mass.1990), *aff'd*, 933 F.2d 66 (1st Cir. 1991).

■■■ Under Massachusetts law, an insurer must defend the insured in an action where the allegations of the complaint against the insured, considered in the light of facts known to the insurer, are "reasonably susceptible" of an interpretation that states a claim covered by the policy terms. *See Lusalon, Inc. v. Hartford Acci. & In-*

---

1. Clasby served as president of the Executive Board of Trustees of FUH between 1982 and 1988, and also as one of the Trustees of the Plan from July to August 1983.

*dem. Co.*, 400 Mass. 767, 772, 511 N.E.2d 595, 598 (1987); *Covenant Insurance Co. v. Friday Engineering, Inc.*, 742 F.Supp. 708, 712 (D.Mass.1990). *See also Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co.*, 406 Mass. 7, 10–11, 545 N.E.2d 1156 (1989). In determining the duty to defend, "the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass.App.Ct. 316, 458 N.E.2d 338, 341 (1983), *further app. rev. den.*, 391 Mass. 1102, 459 N.E.2d 826 (1984). The duty to defend is broader than the duty to indemnify, which is determined from the facts as opposed to the allegations of the complaint. *Travelers Insurance Co. v. Waltham Industrial Laboratories Corp.*, 883 F.2d 1092, 1099 (1st Cir.1989). An insurer can obtain a summary judgment declaring that it has no duty to defend or indemnify an insured when it is clear that the claims against the insured lie outside the policy coverage. *Id.* at 1098–99 (citing *Sterilite Corp.*, 458 N.E.2d at 343–44).

 All of the remaining counts in the underlying actions against Clasby allege that he gained a personal profit or advantage from the undisclosed commissions and ERA's his agency received from Travelers, in connection with the sale and conversion of life insurance policies for the Plan. While Clasby did not receive direct commissions and ERA's from the transactions at issue (Plaintiff's Exh. 5), it is undisputed that the commissions paid to C.T. Garrahan indirectly increased his salary in some years. Thus, all of the remaining claims against Clasby potentially fall within exclusion seven because they "aris[e] out of the Insured gaining in fact any personal profit or advantage." *Cf. Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989) (Court acknowledged "the widely accepted practice of interpreting the phrase 'arising out of' broadly and comprehensively" in the context of an insurance policy exclusion.).

The remaining issue in determining whether exclusion seven applies is whether Clasby was "legally entitled" to the undisclosed personal profit or advantage that he obtained from the transactions at issue.

Clasby was an officer of FUH, whose employees were covered by the Plan, and therefore is a "party in interest" within the meaning of ERISA § 1002(14)(C) and (H). Clasby is also possibly liable as a fiduciary of the Plan, as defined by ERISA § 1002(21)(A). C.T. Garrahan is a party in interest because C.T. Garrahan indirectly provided services to the plan as an undisclosed sales agent for the life insurance policies. § 1002(14)(B). Because of their status as parties in interest, each is *per se* prohibited by ERISA § 1106(a) and (b) from engaging in certain transactions, "regardless of whether the transaction leads to unfair self-dealing." *Arakelian v. National Western Life Ins.*, 680 F.Supp. 400, 407 (D.D.C.1987) (citing *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir.1984)).

The uncontradicted evidence shows that C.T. Garrahan received substantial undisclosed commissions and ERA's from Travelers in connection with the sale of life insurance policies to the Plan, that the commission and ERA's were based upon the premiums paid by the Plan to Travelers, and that Clasby benefitted financially from the payment of the commissions and the ERA's to C.T. Garrahan. Such dealings constitute *per se* ERISA violations by Clasby and C.T. Garrahan because they constitute a

*direct or indirect—*

(A) sale or exchange, or leasing, of any property between the plan and a party in interest[,]

. . . .

(C) furnishing of goods, services, or facilities between the plan and a party in interest[, or]

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

ERISA § 1106(a)(1) (emphasis added). *See Arakelian*, 680 F.Supp. at 407; *Nieto v. Ecker*, 845 F.2d 868, 873–74 (9th Cir.1988). If Clasby is additionally found to be a

fiduciary (as alleged in count one of the Hospital action), the commissions paid directly to C.T. Garrahan and the resulting indirect benefit to Clasby also constitute *per se* violations of ERISA § 1106(b). There is nothing in the record to suggest that ERISA § 1108(b), or any other statutory or administrative exemption for prohibited transactions should apply here.

Since the remaining claims from both the DOL action and the Hospital action arise out of *per se* violations of ERISA § 1106, I find Clasby "was not legally entitled" to any personal profit or advantage arising out of the transactions at issue. All of the remaining claims thus fall squarely within exclusion seven of Aetna's fiduciary responsibility policy, relieving Aetna of both a continuing duty to defend and a duty to indemnify Clasby as an Insured under the policy.

ACCORDINGLY, plaintiff's motion for summary judgment is *allowed*.