NOTICE:   All slip opinions and orders are subject to formal revision
and are superseded by the advance sheets and bound volumes of the
Official Reports.   If you find a typographical error or other formal
error, please notify the Reporter of Decisions, Supreme Judicial
Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston,
MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1510                                              Appeals Court

PACIFIC INDEMNITY COMPANY & others[1]  vs.  MICHAEL LAMPRO[2] &
another.[3]


No. 13-P-1510.

Berkshire.      April 1, 2014. - July 24, 2014.

Present:  Vuono, Meade, & Carhart, JJ.


Consumer Protection Act, Insurance, Unfair act or practice,
    Subrogation.  Insurance, Coverage, General liability
    insurance, Subrogation, Unfair act or practice.  Contract,
    Insurance.  Indemnity.  Subrogation.  Practice, Civil,
    Motion to dismiss.



Civil action commenced in the Superior Court Department on June
17, 2010.

The case was heard by John A. Agostini, J., on a motion for
judgment on the pleadings.


Matthew D. Sweet for the plaintiffs.
Jeffrey L. McCormick for Preferred Mutual Insurance Company.

_____

[1] Steven Levkoff and Sue Levkoff.  Pacific Indemnity Company
brought suit as subrogees of Steven and Sue Levkoff, and the Levkoffs
also sued in their individual capacities.  The single G. L. c. 93A
claim subject to this appeal was brought by Pacific, as subrogees
of the Levkoffs.

[2] Doing business as Steven Michael Designs (SMD).

[3] Preferred Mutual Insurance Company.

MEADE, J.   The plaintiff, Pacific Indemnity Company (Pacific),
as subrogee of its insured, Steven and Sue Levkoff, appeals from the
entry of judgment for the defendant, Preferred Mutual Insurance
Company (Preferred).   Pacific and the Levkoffs sued Preferred and
its insured, Michael Lampro, principal of the landscaping company
Steven Michael Designs (SMD), after SMD damaged the Levkoffs'
property while performing tree and brush removal work.   On appeal,
Pacific claims that the Superior Court judge erred by concluding that
the damage to the Levkoffs' property was not covered by SMD's
commercial general liability  insurance policy.   Pacific argues
that judgment on the pleadings should not have entered for Preferred
on Pacific's G. L. c. 93A claim because, even if the Levkoffs'
property damage fell outside of SMD's insurance policy, Preferred's
conduct violated G. L. c. 93A.   We affirm.

1.  Background.   In January, 2009, the Levkoffs contracted
with SMD to perform landscaping services on their land in Monterey,
Massachusetts.   The Levkoffs were insured under a homeowners'
insurance policy issued by Pacific, and SMD held a commercial general
liability insurance policy through Preferred.   The Levkoffs planned
to build a vacation home on their property, which borders Lake
Garfield and is considered an environmentally sensitive area.   Prior
to contracting with SMD, the Levkoffs presented their building and

landscaping plans to the Monterey Conservation Commission (commission). The permits issued by the commission allowed the Levkoffs to pursue their landscaping plans so long as they did so in compliance with environmental regulations.

The Levkoffs and SMD executed a $24,000 contract to remove trees and brush "in accordance with" the commission's permits and the Levkoffs' engineering plans. The contract held SMD "responsible for damage to new or existing work on the project to the lake, improper execution of work or failure to [take] the necessary precautions to prevent damages." The contract also required SMD to "repair or replace such damage, and also obtain general liability insurance."

SMD hired a subcontractor to perform the landscaping on the Levkoffs' property. Although a preconstruction meeting was required by the commission, neither SMD nor its subcontractor consulted with the commission before carrying out the work. The subcontractor, for reasons not clear on the record, failed to follow the conditions outlined in the permits or the engineering plans. As the judge noted in his memorandum and order, the subcontractor "failed to follow the restrictions in cutting the brush and trees and exceed[ed] the scope of work sanctioned by the permits. Instead, [he] cut a swath of trees and brush on the Levkoffs' property down to Lake Garfield." The land sloping near Lake Garfield was clear-cut, resulting in what the judge described as, "an

environmental nightmare for the Levkoffs." While the damage was extensive, it was confined to the Levkoffs' property. Shortly after the incident, a representative of SMD met with the commission and accepted responsibility for the subcontractor's error. The lakeside slopes required costly remediation. Pacific paid over $100,000 on behalf of the Levkoffs to restore the land.

In July, 2009, Pacific notified SMD and Preferred of its subrogation claim. On March 16, 2010, Pacific sent SMD and Preferred settlement demands pursuant to G. L. c. 93A and G. L. c. 176D, and requested payment of "the full amount of damages."[4] Preferred responded the next month and explained that it was still investigating the claim and stressed that the questions of liability and coverage were not clear.

On June 17, 2010, Pacific and the Levkoffs brought an action against SMD and Preferred alleging negligence and breach of contract against SMD for the improper work performed, and two violations of G. L. c. 93A for failure to settle their claim, one against SMD and the other against Preferred. Preferred successfully moved to sever and stay the G. L. c. 93A claim against it.[5] After the settlement

---

[4] The plaintiffs' complaint described $106,977.72 in remediation costs covered by Pacific, and $37,915.91 in additional expenses, paid by the Levkoffs.

[5] SMD impleaded the subcontractor, the Levkoffs' architect, and the engineering firm. All claims against the impleaded

of the first three counts, Preferred filed a motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), to resolve the remaining c. 93A claim.

In a comprehensive and thoughtful memorandum, the judge allowed the motion for judgment on the pleadings and determined that the damages to the Levkoffs' land were excluded, on multiple grounds, from coverage by SMD's insurance policy. First, he held that SMD's faulty workmanship was not an "occurrence" as defined by the policy and, consequently, was excluded from coverage. Additionally, the judge held that two of the "business risk exclusions" in SMD's insurance policy applied to the damages.

2. Discussion. "A defendant's rule 12(c) motion is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.'" Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting from J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974). Our review is de novo. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). We accept as true the allegations in the complaint and draw every reasonable inference in favor of Pacific. Ibid.

a. Chapter 93A. Pursuant to G. L. c. 93A, persons engaged in

---

third-parties were settled and dismissed prior to trial. A four-day trial on the three counts against SMD occurred in October, 2012. While the jury was deliberating, the parties settled for $90,000. Preferred defended SMD throughout the course of litigation and paid the settlement on behalf of SMD.

trade or commerce are prohibited from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices."  G. L. c. 93A, § 2.  The law "distinguishes between 'consumer' and 'business' claims, the former actionable under § 9, the latter actionable under § 11."  Frullo v. Landenberger, 61 Mass. App. Ct. 814, 821 (2004).  The plaintiffs' complaint failed to specify whether Pacific's c. 93A claim against Preferred fell under § 9 or § 11.  Instead, the plaintiffs claim they are entitled to recovery under both sections.  We disagree.

After the clear-cutting, Pacific brought the c. 93A claim against Preferred, "as subrogee of the Levkoffs" and made settlement demands, "as subrogee of the Levkoffs."  Pacific did not bring any claims, in its capacity as an insurance company, against Preferred. See Frost v. Porter Leasing Corp., 386 Mass. 425, 427 (1982) (if a subrogee pays an obligation, "it succeeds to the rights of the party it has paid").  The "bad faith" that Pacific alleges concerned the settlement of the Levkoffs' subrogation claim, a matter related to damage to the Levkoffs' land, not any business activity.  Because the Levkoffs were not "engaged in trade or commerce," we treat the claim as one arising under § 9.  See Szalla v. Locke, 421 Mass. 448, 451 (1995) ("c. 93A[,§ 11] requires that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce").

General Laws chapter 176D, § 3(9), outlines various "acts and omissions" that may constitute an "unfair claim settlement practice."  G. L. c. 176D, § 3(9).  Included among them is the assertion made by Pacific that Preferred failed to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  G. L. c. 176D, § 3(9)(f).  A violation of c. 176D, § 3(9) is explicitly included as actionable conduct under c. 93A, § 9(1).  See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993).  While the majority of c. 93A actions in this field involve an insured's attempt to enforce its rights against its own insurer, "the specific duty contained in subsection [3(9)](f) [of c. 176D] is not limited to those situations where the plaintiff enjoys contractual privity with the insurer."  Clegg v. Butler, 424 Mass. 413, 419 (1997).

"Our standard for examining the adequacy of an insurer's response to a demand for relief under G. L. c. 93A, § 9(3), is 'whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable.'"  Id. at 420, citing Calimlim v. Foreign Car Center, Inc., 392 Mass. 228, 234 (1984).  A review of the reasonableness of an offer to settle necessarily includes an assessment of the underlying claim, because "a duty to settle does not arise until 'liability has become reasonably clear.'"  Id. at 421.  Determining if a claim is covered by the policy is essential

to evaluating the reasonableness of the insurer's response to a demand. See Polaroid Corp. v. Travelers Indem. Co., supra, at 763, citing R. Keeton & A. Widiss, Insurance Law § 9.5(b)(1)(i), at 1046 (1988) ("the insurer is liable for any good faith settlement within the policy limits -- subject, of course, to the insurer's right to an adjudication that the coverage applied to the loss"). See also Terrio v. McDonough, 16 Mass. App. Ct. 163, 168 (1983).

An insurer may choose to defend its insured but disclaim a duty to indemnify. This is because the "duty to defend is broader than the duty to indemnify." Doe v. Liberty Mutual Ins. Co., 423 Mass. 366, 368 (1996). A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 527 (2005). Accordingly, absent contractual provisions to the contrary, where there is no duty to defend, there can be no obligation to indemnify. See A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, supra at 527.

While virtuous because of its simplicity, the plaintiffs' theory, that "liability is clear" because SMD took responsibility for the clear-cutting, ignores the difference between identifying a responsible tortfeasor and asserting a successful claim for indemnification. The fact that SMD may be liable for the damages does not, on its own, resolve the question of Preferred's duty to indemnify. To determine Preferred's duty to indemnify, we examine whether the damage to the Levkoffs' property is a covered loss under

SMD's policy.

   b.  Coverage.  Questions concerning the interpretation of an insurance contract, including the applicability of coverage exclusions, are questions of law.  See Massachusetts Bay Transp. Auth. v. Allianz Ins. Co., 413 Mass. 473, 476 (1992); Fuller v. First Fin. Ins. Co., 448 Mass. 1, 5 (2006).  The burden is on the insurer to show the applicability of an exclusion.  Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 785 (1992).  We strictly construe exclusions in favor of coverage, but we "read the policy as written" and "'are not free to revise it.'"  See Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997), quoting Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 147 (1984).

   i.  Occurrence.  The insurance policy that Preferred issued to SMD covered property damage caused by an "occurrence," a term defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Pacific claims that because SMD exceeded the scope of the work that it was hired to perform, its actions should be deemed accidental.[6] We disagree.  While SMD regrettably failed to follow the directions in the permit and engineering plans, that failure was not "an

_____

   [6] SMD has not defended this c. 93A claim by attempting to distinguish or divorce itself from the actions of its subcontractor. For this reason, and for simplicity, we refer to SMD as the party charged with the erroneous tree cutting.

unexpected happening without intention or design."  See Liberty Mut. Ins. Co. v. Tabor, 407 Mass. 354, 358 (1990) (noting the common definition of the term "accident").  Cutting more trees than directed to is not a fortuitous or unexpected consequence of performing tree removal work.  See Smartfoods, Inc. v. Northbrook Property & Cas. Co., 35 Mass. App. Ct. 239, 242 (1993) (explaining that the word accident, "by definition, implies the unexpected").  As the judge noted, in the landscaping trade, "the possibility that unintended trees may be cut is clearly a normal, foreseeable, and expected incident of doing business," and not a "fortuitous event for which liability insurance was designed."  SMD's actions were, in retrospect, undesirable, but they were not accidental.  As the judge properly determined, the clear-cutting was not an "occurrence," and therefore, is not covered by the policy.

ii.  Business risk exclusions.  In addition to our conclusion that the clear-cutting was not an occurrence, the contract's business risk exclusions also provided Preferred an alternative defense.  "General liability coverage is not intended as a guarantee of the insured's work, and for that reason, general liability policies contain 'business risk' exclusions."  Dorchester Mut. Fire Ins. Co. v. First Kostas Corp., 49 Mass. App. Ct. 651, 654 (2000).

SMD's policy contains two exclusions relevant here.  Exclusion (j)(5) makes coverage inapplicable to damage to "[t]hat particular

part of any property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arise out of those operations." Exclusion (j)(6) bars coverage for "[t]hat particular part of real property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The policy defines "your work" as "[w]ork or operations performed by you or on your behalf" and also includes "failure to provide warnings or instructions.

Pacific claims that the business risk exclusions do not apply because SMD exceeded the scope of the permits. We disagree. SMD was hired to perform a variety of work on the Levkoffs' land. In addition to tree and brush removal, SMD was contracted to install pathways, create a beach area, and build a shed. The contract authorized SMD to operate throughout the Levkoffs lakeside property, and as a result, under (j)(5), the areas that were improperly clear-cut included "real property on which [SMD's] . . . subcontractor[] . . . perform[ed] operations." SMD was not excluded from any part of the Levkoffs' property, but even in circumstances where "damage occurred to property on only part of which the insured was retained to work, courts have held that the exclusion applies to the entire property." Jet Line Servs. Inc. v. American Employers Ins. Co., 404 Mass. 706, 711 (1989). Accordingly, we conclude that exclusion (j)(5) applies here.

The goal of a general liability policy "is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products." Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995), quoting from 2 R. Long, Liability Insurance § 11.09(2) (1993). When assessing whether exclusion (j)(6), the "your work" exclusion, is applicable, we distinguish between improper work performed by the insured that damages the property of a party to the contract, and damage done to a third-party.

In Porter v. Clarendon Natl. Ins. Co., 76 Mass. App. Ct. 655, 660-662 (2010) (Clarendon), we held that certain business risk exclusions in a general liability policy, similar to those in SMD's policy, did not apply to the damaged property of a third-party. There, the contractor did not have authorization to invade the real property of a neighboring land owner. The claimant in Clarendon was an abutter to the insured's property who did not have a "contractual or other business relationship with the insured." Id. at 662. In contrast, the Levkoffs are seeking restoration costs for damages that resulted when work that they contracted with SMD to perform, on their own property, was improperly done. This claim fits squarely within

exclusion (j)(6).[7]  See <u>Lusalon, Inc</u>. v. <u>Hartford Accident & Indemnity Co</u>., 400 Mass. 767, 770-771 (1987).

3.  <u>Preferred's conduct</u>.  Pacific claims that, even if the damages to the Levkoffs' property lay outside SMD's insurance policy, its c. 93A claim was improperly dismissed.  Policy coverage aside, Pacific claims that Preferred's "three years of deliberate deception and gamesmanship" and the late assertion of its coverage defense, amounted to "bad faith" actionable under c. 93A.  We disagree.

When arguing in support of the survival of its c. 93A claim, Pacific relies heavily on alleged conduct that occurred after the plaintiffs filed their complaint.  The thrust of Pacific's argument focuses on Preferred's alleged bad faith during "the several years of this litigation."  We interpret the inclusion of facts not pleaded in the complaint as Pacific's request to convert the motion for judgment on the pleadings into one for summary judgment, see Mass.R.Civ.P. 12(c), and we decline the invitation.  Instead, our review of Preferred's conduct during the claims settlement process is limited to the allegations and related inferences found in the complaint, and the two contracts at issue here.[8]  See <u>Boston Med.</u>

_____

[7] Pacific's claim that the lake should be considered a third-party abutter is without merit.  Had Pacific not taken remedial steps to prevent harm to the lake, what occurred would still be outside the policy's coverage.

[8] As set forth in the complaint and the documents attached

Center. Corp. v. Secretary of the Executive Office of Health and Human Servs., 463 Mass. at 450.

A right of action under c. 93A for a violation of G. L. c. 176D, reflects "the commonplace ethical view that a claims facilitator ought not wear out the claimant by unduly delaying settlement when liability is clear." Miller v. Risk Mgmt. Foundation of the Harvard Med. Insts., Inc., 36 Mass. App. Ct. 411, 418 (1994). Here, the culpability of SMD for damaging the Levkoffs' land was clear, but Preferred's duty to indemnify was not. Both Pacific and Preferred are sophisticated marketplace actors, accustomed to waging strategic, nuanced, and even incongruous defenses of their insured. While Preferred could have acted more forthrightly and spent less time investigating the indemnification claim, "[o]ur decisions interpreting the obligations contained within G. L. c. 176D, § 3(9), in no way penalize insurers who delay in good faith when liability

thereto, Preferred first spoke with Pacific about the claim on July 22, 2009. The parties exchanged documents in July and August, 2009. Over the next six months, Pacific repeatedly contacted Preferred and sought information about the claim. Preferred offered little, telling Pacific that it was investigating and needed more time to determine questions of liability and coverage. On March 16, 2010, Pacific sent Preferred a demand for relief pursuant to G. L. c. 93A and G. L. c. 176D. In a letter dated April 14, 2010, Preferred conveyed its position that questions of liability were not clear, and reiterated that its client was still investigating. Pacific sent Preferred a final demand letter dated June 15, 2010, expressing the position that "liability has already been resolved," because SMD took responsibility for the clear-cutting before the Commission. Preferred did not respond. The plaintiffs filed suit on June 17, 2010.

is not clear and requires further investigation."  Clegg v. Butler, 424 Mass. at 421.  Since Preferred had no duty to settle the claim, there can be no liability under G. L. c. 176D, § 3(9)(f) (an unfair claim settlement practice includes the failure "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" in favor of the claimant) (emphasis supplied).  As the judge properly determined, in light of Preferred's multiple valid defenses to coverage, Pacific's c. 93A claim failed to "plausibly suggest an entitlement to relief."  See Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist., 461 Mass. 366, 374 (2012), citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).[9]

Judgment affirmed.

---

[9] Pacific's claim that it should have been permitted to conduct discovery before judgment entered on the pleadings is not properly before us.  There is no evidence in the record that Pacific made a timely request to do so below, and consequently, we consider the issue waived.  See Wynn & Wynn, P.C. v. Massachusetts Commn. Against Discrimination, 431 Mass. 655, 674 (2000).